15995

DE LAINE *ET AL.* v. DE LAINE *ET AL.*

(44 S. E. (2d) 442)

*Messrs. DuRant, DuRant & Plowden,* of Manning, for Appellants,

*Mr. Fred Lesesne,* of Manning, for Respondent, Sadie E. Hobbs,

October 8, 1947.

FISHBURNE, J.: This suit involves the title to a tract of 100 acres of land in Clarendon County and certain lots in the town of Manning. It was originally brought for partition and certain injunctive relief, by the plaintiffs, all of whom except D. D. Bozeman, are the children of Thisbie De Laine (sometimes called Tisbie), against Leo De Laine and Robert De Laine, also children of Thisbie. The interest of Bozeman as a tenant of the property under the plaintiffs has passed out of the case and need not be considered. The issue of title was injected by Sadie E. Hobbs, who was added as

a party defendant, with others, some time after the original suit was instituted. In due course, the cause was referred to a special referee to take the testimony and report his findings of fact and conclusions of law. The referee found all issues in favor of the plaintiffs. Upon exceptions being taken to his report to the circuit court, he was overruled. The court entered its decree, upholding the claim of the respondent, Sadie E. Hobbs, and adjudging that she was the owner in fee of all of the real estate involved in the controversy.

Appellants base their claim to title and ownership as heirs at law of their mother, Thisbie De Laine. The respondent, Sadie E. Hobbs, claims as sole devisee under the will of Peter J. De Laine, who, it is admitted, originally owned the real estate which is the subject of this lawsuit.

Peter J. De Laine, as owner, executed and delivered a mortgage on February 11, 1913, to Purdy & O'Bryan, to secure the sum of $1,350.00, payable one year from date, which mortgage covered the 100 acre tract of land and eight lots in the town of Manning. This mortgage was transferred to C. T. Mason, and by him assigned to C. M. White on October 27, 1917, for $1,567.00. On the same day, October 27, 1917, Peter J. De Laine conveyed by deed all the timber on the 100-acre tract to C. M. White for the sum of $1,000.00, and it was specifically provided therein that this $1,000.00 should be credited on the mortgage above referred to. The timber deed was recorded November 11, 1917. About one year later, on November 29, 1918, C. M. White assigned the De Laine mortgage to Henry C. De Laine, a brother of the mortgagor, for an expressed consideration of $1,370.53. This assignment was recorded on February 3, 1919. It does not appear from the record why the purchase price of the timber, to wit: $1,000.00, was not credited on the mortgage, which would have reduced the mortgage indebtedness to that extent. This mortgage was assigned by Henry C. De Laine to his wife, Thisbie, and the assignment was recorded October 12, 1921.

On April 7, 1914, Peter J. De Laine executed and delivered to Levi Mercantile Company his mortgage covering the identical real estate as that described in the first mortgage above mentioned, to wit: 100 acres and eight lots, to secure the indebtedness of $332.76, payable December 1, 1914. This mortgage was transferred to C. M. White on October 25, 1917, and he duly assigned it to Henry C. De Laine on November 29, 1918.

Thus, it appears that Henry C. De Laine became the owner by assignment of both mortgages on November 29, 1918. As shown, he assigned the first mortgage to his wife, Thisbie, in 1921, but there is no record of any assignment of the second mortgage from him to anyone.

Henry C. De Laine died intestate in May, 1930, leaving as his sole heirs at law his widow, Thisbie De Laine, and thirteen children. Thisbie De Laine died in 1942, intestate, leaving the same children as her heirs at law. All of these parties are Negroes. Peter J. De Laine was a carpenter and contractor. He was a native of Manning, but seldom lived there; his business carried him to various points in this and other states. He died in Charlotte, North Carolina, in 1935, leaving a will, which was probated in Nash County, North Carolina, in which he devised all of his property to his grand-niece and foster daughter, Sadie E. Hobbs, the respondent, who also was a resident of Charlotte. A transcript of this will was thereafter duly filed in Clarendon County.

In the Spring of 1918, Peter J. De Laine rented the 100 acre tract for that year to his brother, Henry C. De Laine, who was a preacher, and, as shown by the record, a man of considerable intelligence. Later in the year 1918, on November 29, 1918, Henry C. De Laine became the owner by assignment of the two mortgages hereinabove referred to. About this time Peter entered into an agreement with his brother Henry whereby the latter should take possession of the 100 acre tract and work the land for ten years, at the end of which period possession would be returned to Peter

and the mortgage indebtedness deemed fully paid and satisfied. The terms of this agreement were testified to by Robert De Laine, one of the defendants, who is a son of Henry. The circuit court in its decree held that this agreement was made, and in our opinion the testimony is ample to support the finding. It may reasonably be inferred that this understanding and agreement between the two brothers, Peter and Henry, covered the period from 1919 through 1929.

In discussing the issues raised by the appeal, we will first deal with the subsequent history of the 100 acre tract. As shown by the tax records of Clarendon County, this land was returned in the name of Peter J. De Laine, and the taxes were paid thereon for the years 1917 and 1921. There is no record for the intervening years, 1918, 1919, and 1920, because the tax books for those years were lost or misplaced. For some unexplained reason, in the year 1922, this tract was returned for taxation in the name of Thisbie De Laine, who acquired the senior mortgage in 1921 by assignment from Henry C. De Laine. The evidence does not show or tend to show any deed to this 100 acres of land from Peter J. De Laine to Thisbe De Laine, and for this reason it is clear that such transfer should not have been made by the county auditor. Thereafter, taxes were paid irregularly thereon by Thisbie De Laine, but the property was frequently in execution for the non-payment of taxes. Beginning with the year 1942 and up to the present time no taxes have been paid thereon. But the property has never been sold under any tax execution.

The eight town lots covered by the two mortgages were likewise returned for taxation in the name of Peter J. De Laine, and the records show that the taxes thereon were not paid for the years 1922, 1923, and 1924. The taxes were paid for the year 1925 in his name. In 1926 this property was placed in execution for the non-payment of taxes, and was sold under execution to Thisbie De Laine. The sheriff's deed to her conveys nine lots and three buildings, and this

deed was recorded November 19, 1926. Thereafter, the property was returned by Thisbie in her name as consisting of five lots and six buildings. It is presumed that certain of the lots were combined, thus reducing the total number. It will be borne in mind that all of these transfers and transactions relating to the 100 acre tract and the town lots occurred during the ten year period covered by the agreement entered into between Peter De Laine and his brother Henry. And there is nothing in the record to suggest that Peter, who was away, knew anything about the machinations of Henry and Thisbie.

It may reasonably be inferred from the evidence that Henry C. De Laine not only took possession of the 100 acre tract under the agreement hereinabove referred to, but also assumed control and possession of the town lots covered by the mortgages. The lower court so held, and in our opinion, the evidence supports this conclusion. The testimony shows that during the ten year period agreed to between him and Peter, he rented buildings on the town lots and received payment therefor. There is also evidence that Peter, who was away practically all of the time, sent him money with which to pay the taxes on the property.

The appellants contend that Thisbie De Laine acquired title by adverse possession—the ten year statute—the presumption of a grant by possession which extended over twenty years, and under the tax deed. In our opinion, these claims cannot be successfully maintained.

It may reasonably be inferred that the ten year agreement between the brothers expired on December 31, 1929, at which time the debts secured by the two mortgages were to be deemed paid and the mortgages satisfied. Henry De Laine, as stated, died in June, 1930. Peter J. De Laine came from his home in Charlotte to attend the funeral. During the same year he returned to Manning, and according to the testimony of Robert De Laine, who dealt with the property as agent for his mother and brothers and sisters, Peter de-

manded that they surrender possession of the 100 acre tract and the town lots to him. Thisbie, the mother, was in New York, and Robert, the agent, promised to adjust the matter when his mother returned. However, when Thisbie got back home, Peter De Laine was sick, and no settlement was ever had. It seems that Thisbie, too, was in bad health.

There can be no doubt that the original possession by Henry De Laine of the 100 acre tract was permissive. He became a mortgagee in possession of the premises for a specific purpose—that is, to work the land for ten years in consideration of which the mortgage debts would be deemed paid and satisfied. When he assigned the senior mortage to his wife, Thisbie, in 1921, this did not in any way affect the character of the possession. They were mortgagees in possession. Nor does the record show that there was any change in the nature of their possession. Upon the expiration of the ten year period—at the end of the year 1929—they continued as tenants holding over; and upon Henry's death the next year, 1930, Thisbie held possession of the property in the same capacity. Their possession was the possession of Peter J. De Laine.

Section 382 of the Code provides that whenever the relation of landlord and tenant shall have existed between any persons, the possession of the tenants shall be deemed the possession of the landlord until the expiration of ten years from the termination of the tenancy; or, where there has been no written lease, until the expiration of ten years from the time of refusal to pay rent, notwithstanding that such tenant may have acquired another title, or may have claimed to hold adversely to his landlord. So that if the original tenancy ended in the year 1929, no adverse holding could have commenced until ten years later—in 1939. This action was commenced in 1943, so that no adverse possession ripened.

Nor can there arise in this case the presumption of a deed or grant.

The possession which authorizes the presumption of a deed or grant must be adverse and not permissive. *Frady v. Ivester*, 118 S. C. 195, 110 S. E. 135.

In our opinion, the circuit court was entirely justified in declaring the tax deed procured by Thisbie De Laine in 1926, conveying to her the town lots, null and void. She did not receive a valid tax title. All it effected was a redemption from the tax sale. If it be considered that the tax deed is regular in form, the assertion of title by the respondent, Sadie E. Hobbs, is not an attack upon it, as such, nor does she charge invalidity in any procedural steps essential to its issuance. She does attack the capacity and the qualification of Thisbie De Laine, through whom the appellants claim, to receive a valid tax title under the sale. In 1926, when she acquired the tax title to the town lots she was the owner by assignment of a mortgage covering these lots.

By the weight of authority a mortgagee cannot purchase the mortgaged property at a tax sale and thus acquire a title which will defeat the rights of the mortgagor, as the act of purchase at such sale is deemed to be for the protection of the mortgagee's lien. However, it is usually held that the mortgagee may claim, as against the mortgagor, the taxes and costs paid in protecting the estate. It is regarded as inequitable to permit the mortgagee to acquire title by purchasing the property for delinquent taxes and thereby defeat the title of the mortgagor. 37 Am. Jur., Sec., 1163 page 416; Annotation, 38 L. R. A., N. S. 334.

These rules are especially applicable where the mortgagee is in possession of the mortgaged premises, and is therefore under obligation to pay the taxes thereon. Annotations, 140 A. L. R., page 294, 11 Ann. Cas., page 759.

Furthermore, she procured this tax title in 1926, during the ten year period when the agreement between Henry and Peter was in full force and operation. It is therefore clear that when she acquired by assignment the senior mortgage from her husband, Henry, in 1921, covering not only the farm property but the town lots, she became in effect a party to the agreement and occupied a trust relation to Peter De Laine, the mortgagor and owner of the property. *Union Nat. Bank v. Cook,* 110 S. C. 99, 96 S. E. 484.

It is quite true, as pointed out by appellants, that the respondent would have no right to bring an action to redeem under Section 394 of the Code; and that the right to foreclose ended on February 11, 1934, and October 1, 1935, respectively. But it is overlooked that no cause of action ever accrued to Peter De Laine, or his devisee, the respondent in this case, under Section 394, nor was there any right to foreclose, because the mortgages were paid by the agreement for the ten year use of the land, from 1919 through 1929.

Nor, in our opinion, has *laches* been shown on the part of Peter J. De Laine or his devisee, the respondent, Sadie E. Hobbs.

*Laches* is the neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, or neglecting or omitting to do what in law should have been done for an unreasonable and unexplained length of time and in circumstances which afforded opportunity for diligence. *Bell v. Mackey,* 191 S. C. 105, 3 S. E. (2d) 816; *Jackson v. Johnson,* 186 S. C. 155, 195 S. E. 239.

On this question, the situation of these parties must be kept in mind. After Henry's death in 1930, his family became widely scattered, and Peter was living in Charlotte. It appears that in the year 1930, after his

brother's death, Peter attempted to get his affairs straightened out. He was put off and evaded by Thisbie's son, Robert, who told him that his mother would adjust the matter upon her return from New York. Thereafter, it is evident that no definite action was taken because of the ill health of Peter and Thisbie, and because they lived in far distant places. We think the delay of the claim set up by Sadie E. Hobbs, as the devisee of Peter, is satisfactorily explained. The parties are closely related by blood, and no overt act was brought to the attention or notice of either Peter or Sadie Hobbs, which gave them reason to doubt the good faith of their relatives.

Judgment affirmed.

BAKER, CJ., and STUKES, TAYLOR, and OXNER, JJ., concur.