18104

Sam A. BRANTON, Plaintiff-Respondent, v. Essie Branton Martin, Lela Branton Owens and Alice Branton Thomas, Defendants-Respondents, and Maggie Branton, Laura Branton and Melvin Z. Owens, Defendants-Appellants.

(132 S. E. (2d) 285)

*E. Windell McCrackin, Esq.*, of Myrtle Beach, *for Appellant, Maggie Branton,*

*Arthur W. Holler, Jr., Esq.*, of Myrtle Beach, *for Appellant, Melvin Z. Owens,*

*Eldridge C. Huffman, Esq.,* of Myrtle Beach, *for Appellant, Laura Branton.*

*Messrs. Jack H. Page* and *Dexter R. Hamilton,* of Myrtle Beach, and *H. T. Abbott* and *Suggs & McCutcheon,* of Conway, *for Respondents,*

*E. Windell McCrackin, Esq.,* of Myrtle Beach, *for Appellant, Maggie Branton,* in Reply.

July 29, 1963.

BRAILSFORD, Justice.

This action involves title to a lot and improvements in Myrtle Beach, South Carolina, which formerly belonged to Sarah A. Branton. The respondents Sam. A. Branton, Essie B. Martain, Lela B. Owens and Alice B. Thomas claim title in themselves and in the appellant Maggie Branton as tenants in common under a deed from Sarah A. Branton dated January 8, 1946, and recorded January 20, 1958. The appellant Maggie Branton claims title in herself under a deed from Sarah A. Branton dated August 31, 1946, and recorded April 23, 1951. The appellant Laura Branton supports the claim of her sister, Maggie Branton, and claims no interest in the disputed property. The named respondents and appellants are the sole surviving children of Sarah A. Branton, who died intestate in 1953.

The action was brought by Sam. A. Branton for partition of the lot in dispute among the five grantees in the deed of January 8, 1946. The pleadings of the respective parties, including "Cross-Complaints", put in issue the validity and priority of the two deeds from Sarah A. Branton.

All issues were referred to the Master for Horry County, who, on sharply conflicting testimony, found in favor of respondents on all issues, holding:

1. The deed of January 8, 1946, from Sarah A. Branton to the respondents and Maggie Branton was properly executed, delivered and accepted and was a valid conveyance of the property described therein.

2. Maggie Branton had actual notice of this conveyance on August 31, 1946, when she accepted the deed purporting

to convey to her the same property previously alienated by her grantor. Hence, the failure to record the prior deed was immaterial.

3. Maggie Branton stood in a confidential relationship to Sarah A. Branton and procured the deed of August 31, 1946, by overreaching and undue influence.

On appeal to the circuit court, the master's findings of fact and conclusions of law were affirmed. The exceptions on this appeal challenge the correctness of each of the three conclusions enumerated above.

Sarah A. Branton, who had been the head of her family since her husband's death in 1913, purchased the lot in question from Myrtle Beach Farms Corporation in 1922 and constructed a dwelling thereon. The total cost of the lot and dwelling was approximately $1,200.00, most of which was borrowed from the Corporation. Mrs. Branton and her daughters Laura, Maggie and Alice occupied this dwelling, supported themselves, and paid for and improved the property by operating a boarding house.

Alice was married in 1933. Soon afterward, Mrs. Branton assisted her in purchasing a lot and in building a home for herself. At about the same time, Mrs. Branton conveyed a portion of the boarding house lot to Laura and Laura constructed a house on it into which she moved.

Mrs. Branton and Maggie continued to live together and to operate the boarding house until Mrs. Branton's death in 1953 at the age of 87. For sometime prior to her death, Mrs. Branton's sight, which she eventually lost completely, was seriously impaired and she was in declining health. Maggie ran the boarding house and took care of her mother, with no financial assistance and only casual help from other members of the family.

In 1945 Mrs. Branton made a will leaving all of her property to Maggie. She became dissatisfied with this disposition of her estate, stating, according to the respondent Essie B. Martin, "Before I will leave all I have to one young'un,

I will leave it wide open." She obtained possession of the will from her lawyer and destroyed it. Alice B. Thomas assisted her mother in obtaining possession of the will which, according to some of the testimony, Maggie tried to prevent. This was the occasion of a row between Mrs. Branton, Maggie, Mrs. Owens and Mrs. Thomas, the details of which are not disclosed by the record.

We now consider the deed of January 8, 1946, which purports to convey the remainder of the boarding house property to all of the grantor's children, except Laura, to whom a portion of it had been previously conveyed.

Sam Branton testified that in February of 1946, while he was visiting his mother, Maggie being the only other person present, she handed him a paper, saying "take care of it and keep it, it is for your children, and Maggie knows about it. You may need it some day." On cross-examination he stated: "she said Maggie knowed about it and knowed what it was for."

On leaving his mother's home, Sam went to that of his sister Laura and gave her the paper, requesting that she keep it for him. He stated that he did so because he was afraid that it would be lost or destroyed at his house. Laura did keep the paper, which everyone concedes was the deed of January 8, 1946, until 1958, when she had it recorded. Fortunately, this was done photostatically, because the original deed was stolen from her, with other belongings, before the references were held.

Appellants assail this deed for insufficiency as to execution, as to delivery and as to acceptance by the grantees.

The execution of the deed is formally regular. It purports to have been signed by Mrs. Branton, who could not read or write, by her mark, in the presence of H. S. Barnes and Belle S. Hart as subscribing witnesses. The probate is complete, having been sworn to by H. S. Barnes before Ethel Singleton, who purportedly signed as notary public and affixed her official seal. When a certified,

photostatic copy of the deed was offered in evidence, it having been established that the original was lost, appellants demanded proof of execution. H. S. Barnes was called for this purpose. He identified his signature as an attesting witness and as affiant and stated that he had witnessed the deed. While the witness had no recollection of the transaction and his testimony did not exclude any possibility that his signature had been forged, the master ruled that it was sufficient proof of execution and admitted the copy in evidence without further objection.

After the original report was filed, appellants obtained affidavits from the other subscribing witness and from the notary public to the effect that they had not signed the deed. On the basis of these affidavits, the appellants secured an order referring the case back to the master for taking further testimony and the two affiants were examined as witnesses. Their repudiation of their signatures was very much weakened on cross-examination and by the testimony of a well qualified handwriting expert. The master was fully justified in concluding that these witnesses simply did not remember the transaction which took place some fourteen years before they were called upon to testify, and that they did in fact sign the deed as subscribing witness and as notary public. The following quotation from *Hunt v. Smith*, 202 S. C. 129, 24 S. E. (2d) 164, is appropos:

"\* \* \* Subscribing witnesses to an instrument usually have no occasion to charge their minds with the circumstances surrounding its execution, and the fallibility of the human memory is such that if upon recollection alone the validity of transfers of real estate could be attacked without the aid of legal presumptions to uphold the instruments, titles to real estate would hang upon a very slender thread.

"\* \* \* In the present case the witness who signed the probate is the one who has died. His signature is not questioned, and in signing the probate he specifically certified that he saw the testator sign, seal and deliver the instrument in question, and that he with the other witness attested the same.

"To such a certificate the law attaches a presumption of truth. It is not an irrebuttable presumption, but it is a presumption that has the force and effect of evidence, and such evidence should not be lightly disregarded when the instrument is attacked." See also *Merck v. Merck*, 95 S. C. 328, 78 S. E. 1027.

We conclude that the concurrent finding below that the deed was executed by Mrs. Branton is not against the weight of the evidence.

The exception to the sufficiency of the evidence to establish a delivery of the deed rests upon the claim that the testimony of Sam A. Branton as to this transaction with his deceased mother should have been excluded under Section 26-402, Code of Laws, 1962, sometimes called the "dead man's statute." It is at least doubtful whether the statute applies to this action in which the parties prosecute and defend as grantees or alienees of the deceased person, rather than as executor, administrator, heir-at-law, etc. See *Cantey v. Whitaker*, 17 S. C. 527. However, the question need not be pursued because the record shows that Branton's testimony was not objected to on this ground. Therefore, the point is not available here. *In re Brazman's Will*, 172 S. C. 188, 173 S. E. 623.

The circuit judge considered the fact that Sam turned the deed over to his sister Laura for safekeeping to be strong circumstantial evidence of delivery to him by the grantor. We agree. The paper was either Mrs. Branton's deed or it was a fabrication by Sam. If it had been the latter, it is inconceivable that he would have entrusted it to the only child of the grantor not included as a grantee. Appellants argue that this circumstance is entitled to no weight as evidence of good faith in the light of Sam's further testimony that he did not read the paper before turning it over to Laura; hence, he did not know that she was excluded. The fallacy of this argument is that if the deed had been spurious, Sam would surely have known its terms.

We think that the evidence amply supports the conclusion of the master and circuit judge that Mrs. Branton delivered possession of the deed to her son, intending to surrender control of it and to vest title in the grantees, subject only to the life estate reserved to her by the terms of the instrument. Under the decisions of this court, nothing more was required to pass title. *McDaniel v. Anderson*, 19 S. C. 211; *Carrigan v. Byrd.* 23 S. C. 89; *Watson v. Cox*, 117 S. C. 24, 108 S. E. 168; and *Larisey v. Larisey*, 93 S. C. 450, 77 S. E. 129.

The final contention made by appellants with respect to this deed is that Sam Branton, being ignorant of the nature of the instrument, could not accept delivery of it as a deed; hence, title did not pass.

No case has been cited in which the delivery of a deed by a grantor to a grantee, who accepts and retains it, has been held ineffectual because of the grantee's failure to inform himself of the terms of the instrument.

Under the common law a conveyance was effective "although the transferee did not assent thereto or even know thereof, he always having, however, the right to 'disclaim,' that is, to repudiate the conveyance and thereby revest the title in the grantor. Such is the rule in England at the present day. And in spite of the constant assertion and reassertion by the courts in this country of the necessity of acceptance, it is difficult to avoid the conclusion that in a number of states the rule in this regard is the same as in England, that no acceptance of the conveyance is necessary, though the grantee may, if he choose, dissent and disclaim." Tiffany, Real Property, Sec. 1056.

So far as we have discovered, this court has never expressly held a conveyance to be invalid for want of acceptance by a non-dissenting grantee. Appellants follow West's South Carolina Digest, Deeds, Key No. 64, in citing the old case of *Walker v. Frazier*, 19 S. C. Eq. (2 Rich.) 99, as standing for this proposition, but it quite clearly does not do so.

In some jurisdictions which have adopted the view that an intelligent acceptance is essential to the validity of a deed, an exception is recognized, which fits this case.

"* * * acceptance of a deed of voluntary settlement, where its terms are beneficial to the grantee, is presumed, although the grantee had no knowledge of the existence of the deed until after the grantor's death." 26A C. J. S. Deeds § 186, p. 24.

Other courts hold that in this situation no presumption of acceptance arises.

Assuming the necessity, ordinarily, of an intelligent assent by a grantee to whom an otherwise effective deed of conveyance has been delivered, our decisions have, either expressly or impliedly, invoked the presumption of acceptance, even though the grantee was ignorant of the conveyance or of its terms. We quote from *Larisey, supra,* 93 S. C. 450, 453, 77 S. E. 129, 130:

"At the hearing in this court, we declined to hear argument on the question of the delivery of the deed, and of the sufficiency of the delivery thereof to vest the legal title in W. N. Larisey, Jr., the grantee therein named: *the court being satisfied that the delivery to W. N. Larisey, Sr.,* (of which the grantee was ignorant until some seven years later) *was sufficient to vest the legal title in W. N. Larisey, Jr.* Consideration of the printed briefs of counsel and the authorities therein cited confirms this opinion. It was only necessary for the grantor to deliver the deed to some one for the grantee to divest himself of the legal title, and his delivery thereof to W. N. Larisey, Sr., was sufficient for that purpose. *In the absence of evidence to the contrary, it will be presumed that the donee of valuable unincumbered property, conveyed without condition, will accept the gift."* (Interpolation and emphasis added.)

In *Watson, supra,* 117 S. C. 24, 108 S. E. 168, a widower executed deeds parceling his lands among his children and left them with the scrivener to be delivered to

the respective grantees upon the father's death. The children knew that deeds had been made but were not allowed to inspect them and were intentionally kept in ignorance as to the parcels allotted to each. The grantor married again and undertook to repudiate the deeds. After stating the first question to be whether the grantor had made a delivery of the deeds and divested himself of the fee, the court stated:

"There is no difference of opinion as to the principles of law that should affect the first question, to wit, that unless the grantor delivered the deeds that had been drawn up by him either to the grantees or in escrow, unless he had parted with them intending to part with control over them, the deeds were never fully executed, and the grantor did not divest himself of the fee in the lands; if he did deliver the deeds in this manner, the fee passed immediately to the grantees named." 108 S. E. 169.

Applying this principle, the court concluded:

"* * * It was a complete execution of the deeds, and had the effect of divesting S. M. Cox of the fee in the land in question, but of reserving to him a life estate therein * * *." 108 S. E. 170.

Thus, Larisey expressly recognized that a presumption of acceptance arises from the beneficial character of a voluntary conveyance, even though the grantee has no knowledge of its execution or delivery. Watson held that delivery to the scrivener was a complete execution of the deeds, even though the grantees were ignorant of their terms. In Watson, and in many other decisions of this court, the principle to be applied in determining whether a deed has been executed was stated without reference to a necessity that the grantee intelligently assent. Under either view, the result is the same and we need not decide whether the rule on which appellants rely is, ordinarily, applicable in this jurisdiction.

We agree with the lower court that Mrs. Branton divested herself of title to the property in dispute by the execution and delivery of the deed of January 8, 1946.

The master's finding, affirmed by the circuit judge, that Maggie did have actual notice of the prior deed is challenged on the sole ground that "there is no *admissible* testimony to prove same." Again, reliance is upon the proposition that Sam Branton's testimony as to statements made by his mother when she delivered the deed to him was incompetent under Sec. 26-402, Code of Laws, 1962. For the reasons stated in disposing of the same contention with respect to his testimony on the issue of delivery, this exception must be overruled.

There is no suggestion in this record but that Maggie Branton served her mother faithfully and well for some twenty years after all of the other children had left home. The record indicates that she had a special claim on her mother's bounty—even that she may have had a legal right to compensation. We are in sympathy with her position in this controversy and have reluctantly concluded that she took nothing under the deed of August 31, 1946, because the property had been previously alienated. Were it otherwise, we would sustain this deed against the claim that it was obtained by undue influence. We think that the presumption of invalidity, arising from the confidential relation between the parties, has been removed by evidence as satisfactory as could be reasonably expected.

Mrs. Branton was of strong character. As colorfully stated by one of her children, "she was boss where she was at." The deed was executed some seven years before her death, long before she became blind and bedridden. Before either deed was executed, Mrs. Branton recognized Maggie's entitlement to special consideration by making a will in her favor. Her change of heart in favor of equality among her children did not long survive the revocation of the will and the execution of the deed of January 8, 1946. When she again decided that she wanted Maggie to have the property, she selected a messenger to send for a lawyer to attend to the matter. When he did not come promptly, she sent the messenger back. There is no

testimony that Maggie instigated this, that she was present when her mother gave these instructions or that she even knew about it. When the lawyer came in response to her request, it was Mrs. Branton who told him what she wished to accomplish. There is no testimony that Maggie was present during this conference. When the lawyer and his secretary returned for the purpose of having the deed executed, Mrs. Branton called Maggie into the room to do the writing. According to the finding of the circuit court, Mrs. Branton held on to the pen while Maggie signed her name to the deed. Several completely disinterested witnesses testified convincingly to statements made to them by Mrs. Branton, before and after the execution of this deed, signifying her intention that Maggie should have the property and her reasons for it. Unfortunately, she had put it beyond her power to gratify this entirely understandable desire to reward Maggie for her long years of service.

Respondents' claim that Maggie dominated Mrs. Branton is refuted by their testimony that she stood meekly by and saw her mother deliver the deed of January 8, 1946, when she "knowed what it was for" and must have felt that she was entitled to preferential treatment over the other grantees.

This disposes of the primary issues raised by the appeal. Attention will now be given to the appeal of Melvin Z. Owens, a grandchild of Mrs. Branton, who was made a party-defendant upon the allegation that he claimed some interest in the property, but that he had no such interest. The complaint and the cross-complaints put this defendant upon notice that the other parties to the action claimed the right to partition of the premises and denied that he had any interest therein. To the complaint and to one of the cross-complaints, this defendant simply filed a general denial. To the other cross-complaint, he filed a demurrer upon the ground of insufficiency of facts to state a cause of action as to him. Apparently, this demurrer was orally sustained, although a written order was never taken. He, thus failed to set up in this action any claim to the

premises he may have. Therefore, his exceptions present no issues for determination on this appeal.

It appears from the record that Owens' interest arises under disputed deeds from Maggie, purporting to convey a portion of the property in question to him, as to which a separate action is now pending between them. Both Maggie and Owens, denying respondents' title, simply resisted their claim to partition in this action. Neither filed an adversary pleading against the other. Therefore, the judgment in this action is not *res judicata* of such claim as Owens may have to Maggie's share in the proceeds of sale. *Cf. Kinard v. Polk,* 241 S. C. 555, 129 S. E. (2d) 527. Nor does it bar him from petitioning the court to withhold payment of the share otherwise distributable to his grantor until his claim thereto can be adjudicated.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.