18332

Gordon H. MAY, as Administrator of the Estate of Mrs. Jeannette Hill May, Plaintiff-Appellant, v. C. B. JETER, as Executor of the Last Will and Testament of George C. Wood, C. B. Jeter, Individually, Kathleen A. May, Mary H. Wood, Lucy Wood Green, L. L. Wood, and Mrs. J. B. Christopher, as Administratrix of the Estate of Jennings B. Christopher, Defendants, of whom Kathleen A. May is Appellant, and C. B. Jeter, Executor, *et al.*, are Respondents.

(141 S. E. (2d) 655)

*Messrs. James M. Arthur* and *Long & Long,* of Union, *for Plaintiff-Appellant,*

*Arnold R. Merchant, Esq.,* of Spartanburg, *for Appellant,*

*Messrs. T. E. Walsh,* of Spartanburg, and *Robert C. Lake,* of Whitmire, *for Defendants-Respondents,*

April 14, 1965.

BUSSEY, Justice.

This appeal involves the title to a tract of farm land containing approximately 308.7 acres in Union County, South Carolina, title to which was acquired by Mrs. Jeannette Hill May in 1911. In August 1921, Mrs. May mortgaged said real estate to the Federal Land Bank, the amount of the mortgage being $8,000.00, payable in sixty-five semi-annual installments, with interest at the rate of 6%. In March 1922, Mrs. May executed a second mortgage to her sister's husband, George C. Wood, in the amount of $6,333-.00, and, on November 15, 1927, the Federal Land Bank assigned its mortgage to the said George C. Wood. Thereafter, Wood assigned the Land Bank mortgage to the Peoples State Bank of Greenville in March 1930, this mortgage being reassigned to Wood in the year 1940.

In November, 1931, the property was advertised for sale for delinquent taxes, and bid in by Wood. At some time prior to 1933, the exact year not appearing of record, Mr. and Mrs. Wood moved onto the property and for a time occupied the residence thereon with Mr. and Mrs. May. Wood, during the year 1932, sold his home in Greenville where he had previously lived, and in February 1933, Mr.

and Mrs. May vacated the property and went to live with their son, Gordon H. May, never returning to their former home.

On January 20, 1934, Wood, as a result of the tax sale of 1931, obtained a tax title for the property from the sheriff of Union County, which was recorded the same day. Mr. and Mrs. Wood lived on and occupied the property until her death on March 5, 1948, and thereafter, Mr. Wood resided there until his death on August 6, 1957. During 1948 Wood, apparently relying on his tax title and advice of the Probate Judge who was a friend and adviser of Wood, satisfied of record the two mortgages which he held, but there is no evidence as to what amount, or amounts, if any, were paid on either of said mortgages by Mrs. May or by anyone on her behalf.

In January 1952, Wood executed a deed to C. B. Jeter for ten acres of the property in question, which deed was duly recorded. Thereafter, Wood and Jeter entered into an agency agreement under date of April 26, 1956, preparatory to subdividing and selling lots and/or tracts of land from the property, which agreement was duly recorded and authorized Jeter to enter into agreements and contracts for the sale of the same on behalf of Wood. In connection with the proposed subdivision, J. B. Christopher (a son-in-law of Mrs. May) was engaged as a surveyor to make a plat, the survey being made on April 17, 1956. Within a month thereafter, Mrs. May, on May 9, 1956, executed a deed in favor of her son-in-law Christopher covering the entire tract of land, consideration for said deed being expressed as ten dollars and love and affection. Wood then brought an action, during the same year 1956, against Christopher, asserting title to the property by virtue of his tax deed, seeking to quiet his title thereto, and have the deed to Christopher canceled as a cloud upon his title. Wood was then some 84 years of age, in poor health, and, thereafter, in and out of hospitals until his death on August 6, 1957,

and no hearing was held prior to his death in the aforesaid action.

Wood, on August 1, 1956, signed and physically delivered to his niece, Kathleen A. May, an instrument, claimed by her to be a deed to the property, and in this instrument, he, *inter alia,* gave her the two mortgages hereinabove referred to, which had already been satisfied of record. Thereafter, Wood executed a will in which he named Jeter as executor and certain relatives of his as beneficiaries, the executor being authorized and directed to sell the real estate in question and distribute the proceeds among the beneficiaries. The purported deed from Wood to Kathleen A. May was recorded on August 5, 1958, approximately one year after the death of Wood. On August 23, 1958, Jeanette Hill May by her committee, Gordon H. May, commenced an action against all adverse claimants asserting fee simple title to the tract of land and seeking to quiet her title thereto.

Thereafter, the executor and beneficiaries of Mr. Wood were substituted as parties plaintiff in the action commenced by Mr. Wood, and that action was combined with the action commenced by the committee for Mrs. May, and the combined causes referred to a special referee for the purpose of taking the testimony, reporting his findings of facts, conclusions of law and recommendations to the court. The referee held a number of references between February 10, 1961 and October 21, 1962. During the pendency of the matter before the referee both Mrs. Jeannette H. May and J. B. Christopher died, and, by consent of counsel, their respective heirs and administrators were made parties by order of the referee.

The referee in his report concluded that Mr. Wood had acquired title to the property by virtue of the tax deed and ten years adverse possession; and, moreover, that Jeannette H. May and those claiming under and through her were barred under the doctrine of laches. He further found the purported deed from Wood to Kathleen A. May ineffective

on the ground that such was not delivered with the intention to make an absolute conveyance of property and that, therefore, there was no completed delivery.

Upon exceptions to the report of the referee, the circuit judge concluded that the parties claiming under and through Mr. Wood had not proved title by adverse possession, it being the view of the circuit judge that the evidence did not disclose any act on the part of Wood which would bring home to Mrs. May the adverse nature of his holding until about the year 1948. He affirmed, however, the finding of the referee that Mrs. May and those claiming under her were barred by laches, and in all other respects confirmed the findings and recommendations of the referee.

From this order of the circuit court only Kathleen A. May and Gordon H. May appeal. Gordon H. May appeals only in his representative capacity "As Administrator of the Estate of Jeannette H. May, deceased". The record does not reflect that as such administrator he has any interest in the property in controversy, and in such capacity his exceptions present no issue for review by this court. *Ex Parte Neal Loan & Banking Co.,* 58 S. C. 269, 36 S. E. 584; *In Re Jones' Estate,* 102 S. C. 110, 86 S. E. 203; *Branton v. Martin,* 243 S. C. 90, 132 S. E. (2d) 285. He, however, moved belatedly before this court that the heirs of Mrs. May, of whom he is one, be made parties to his appeal. Assuming, without deciding, his motion to be proper, any interest even on the part of such heirs is doubtful, in view of the deed from Mrs. May to Christopher, the validity of which, as between those parties, the court below found it unnecessary to pass upon. We have, nevertheless, considered his appeal on its merit, and as a timely appeal by such heirs.

It is alleged and argued that Wood entered into possession as mortgagee with the permission of Mrs. May and occupied the relationship of trustee for and on behalf of Mrs. May; that consequently, Wood could

acquire no interest in the property by virtue of either the tax deed or adverse possession. It is well established, at least in this jurisdiction, that where a mortgagee enters with the permission, either express or implied, of the mortgagor, he occupies the premises in the *quasi* character of trustee for the mortgagor and cannot hold adversely to the rights of the mortgagor until he distinctly disavows and repudiates his mortgagee relationship and notice thereof is brought home to the mortgagor. While such trustee relationship continues, the mortgagee cannot acquire title to the property by virtue of a tax deed alone. *DeLaine v. DeLaine,* 211 S. C. 223, 44 S. E. (2d) 442; *Ham v. Flowers,* 214 S. C. 212, 51 S. E. (2d) 753. Such relationship, however, does not prevent a mortgagee in possession from holding adversely to the mortgagor's legal title nor preclude him from perfecting legal title in himself by adverse possession if the nature of his possession is brought home to the mortgagor. *Frady v. Ivester,* 129 S. C. 536, 125 S. E. 134, 136.

The circuit judge having held, in effect, that Wood had not perfected legal title in himself by adverse possession for failure of proof of ouster, the contention of Gordon H. May now is that, under all of the circumstances, the lower court erred in concluding that those parties claiming under Jeanette H. May were barred by laches, and we proceed to consider this question.

Mrs. May and Mr. Wood are both deceased, with the result that the court does not have the benefit of the testimony of either of them. None of the witnesses knew precisely when Wood moved upon the property and occupied the same along with Mrs. May and her husband, and none of them claimed to know what, if anything, transpired between Mr. Wood and Mrs. May, when he first occupied the property, or when the Mays vacated the property in February 1933. The record is clear, however, that from February 1933 until the date of his death Wood continuously, notoriously and openly exercised every incident of ownership

with respect to the property, insuring the same, paying taxes thereon from the year 1931, farming the same, selling timber, topsoil, etc.

Mrs. May, on the other hand, departed from the heavily mortgaged property and, as far as the record goes, exercised no incident of ownership with respect thereto from February 1933 until her deed to her son-in-law Christopher on May 9, 1956. While her exact ages does not appear of record, it is reasonably clear that she was aged and infirm at that time. The record discloses nothing as to, the state of her mental health then, but approximately two years later an action was commenced on her behalf by a committee. Just when she was deemed to be incompetent to manage her affairs does not appear of record. In any event, she took no action to legally assert any claim until the 1956 deed to her son-in-law, and as long as she was competent, no action was brought by her.

It is clearly inferable from all of the evidence that Mrs. May while still possessed of her faculties knew that she had no just or valid interest in or claim to, the land, and that any stale or dubious claim on her part was engendered by her son-in-law Christopher being engaged to make a survey of a portion of the property for subdivision. It is worthy of note that insofar as the record discloses Mrs. May was without benefit of any income subsequent to February 1933, until she became a welfare pensioner, which status she occupied for a number of years prior to her death. It is undisputed that she never made any demand upon Wood with respect to the land, for an accounting or otherwise, and it is inconceivable that she would have failed to assert any claim, under the circumstances, if, in point of fact or law, she had any just claim.

Under these circumstances, we think the special referee and the circuit judge correctly applied the doctrine of laches to those persons claiming under and through Mrs. May. Even if the title of Mrs. May in and to the property were not extinguished, justice and equity would require that an accounting be made between the parties and

that possession of the real property be withheld until the balance of the mortgage debts be paid. *Knight v. Hilton,* 224 S. C. 452, 79 S. E. (2d) 871.

As was stated in *Privette v. Garrison,* 235 S. C. 119, 110 S. E. (2d) 17,

"The difficulty, if not impossibility, in these circumstances, of arriving at a safe and certain conclusion as to the truth of the matter in controversy, and thus doing justice between the parties, calls for the application of this equitable doctrine. *Main v. Muncaster,* 171 S. C. 269, 172 S. E. 222; *Jannino v. Jannino, supra* [234 S. C. 352, 108 S. E. (2d) 572.].

" 'While the rule requires for its support no element of estoppel, but is founded on public policy, the fact that the delay has tended to defeat defendant's power to prove his right is an additional reason for its application; and relief is more readily denied in case of the death of a party to the transaction than in other cases, since his death usually presents difficulties in procuring evidence and conducting the defense other than those arising from the mere loss of his testimony. To bring the rule into operation, it is not necessary that the court should be convinced that the original claim was unjust or has been satisfied; it is sufficient if the court believes that under the circumstances it is too late to ascertain the merits of the controversy.' 30 C. J. S. Equity § 119, p. 542."

In addition to laches on the part of Mrs. May, the result reached by the referee and the circuit judge is sustainable on another ground. No action by or on behalf of Mrs. May was commenced until more than twenty-five years after she vacated the premises, and more than twenty-four years after Wood obtained a tax deed to the property. It is well established in this jurisdiction that adverse possession for a period of twenty years raises a presumption of a grant. See cases collected in West's South Carolina Digest, Adverse Possession, Par. 104.

Even though the record does not establish precisely when the adverse nature of the holding by Wood was first brought home to Mrs. May, it is also well settled in this state that twenty years adverse possession presumes ouster. *Wells v. Coursey,* 197 S. C. 483, 15 S. E. (2d) 752; *Brevard v. Fortune,* 221 S. C. 117, 69 S. E. (2d) 355; *Powers v. Smith,* 80 S. C. 110, 61 S. E. 222.

In the last cited case it was said:

"In action by tenants in common or any others, claimants to land, for 20 years in the face of notorious and exclusive possession, with the use and exercise of authority incident to exclusive and adverse ownership, is sufficient to rebut the presumption that possession is in subordination to the legal title, and to establish the presumption of a grant or deed, and almost any other presumption necessary to the protection of the possession."

We see nothing in the instant record sufficient to rebut the foregoing presumptions to the benefit of which Wood and those parties now claiming under him are entitled. That Jeter, who acquired ten acres of the land in 1952, is entitled to the benefit of the presumption of a grant is shown by the cases of *Ellen v. Ellen,* 16 S. C. 132; *McLeod v. Gardner,* 2 Rich. 19, and *Thomson v. Peake,* 7 Rich. 353, holding that continuous adverse possession of land for twenty years by different persons and at different times is sufficient to raise the presumption of a grant.

For all of the foregoing reasons, we conclude that there was no error on the part of the lower court in holding that the parties claiming under Mrs. Jeannette H. May are not entitled to the property.

With respect to the appeal of Kathleen A. May, the only issue before the Court is whether or not she holds a valid title to the property by virtue of the purported deed from Wood under date of August 1, 1956. This issue of title is a legal one, with respect to which the findings of fact by the lower court are binding upon us if supported

by the evidence. Both the referee and the circuit judge found as a fact that the instrument in question was not intended by Wood to operate as a deed of conveyance. The rule is well established that, "Delivery of a deed includes, not only an act by which the grantor evinces a purpose to part with the control of the instrument, but a concurring intent thereby to vest the title in the grantee." *Powers v. Rawles,* 119 S. C. 134, 153, 112 S. E. 78, 85. Such is true even though the instrument be denominated a deed by the maker, have express words of immediate grant, have sufficient consideration to support a grant, and be formally delivered. Numerous authorities on this subject are reviewed in the case of *Burke v. Burke,* 141 S. C. 1, 139 S. E. 209, 56 A. L. R. 729.

The cardinal question here is precisely what was the intent of Wood when he executed and manually delivered the instrument in question. On the day in question, Mr. Wood spent the day at the home of Miss May in Spartanburg, taking with him the materials for the preparation of this somewhat length instrument, which was typed by Miss May. Present during all of that day was a sister of Miss May, and her mother was there for a part of the day. At the time Mr. Wood was much concerned as to the deed to the property obtained by Mr. Christopher, and it is clearly inferable from the testimony of Miss May, her sister and her mother that at least one primary motivating factor in the mind of Wood at the time was the defeat of the claim of Christopher, either before or after the death of Wood. Miss May's sister and mother, who witnessed the instrument, testified, in effect, that it was their understanding that the instrument would not take effect until after the death of Mr. Wood.

The instrument itself contains quite a bit of family history, not here material, except that such, one dollar, love and goodwill are recited as the consideration therefor. There are certain directions to Miss May as to cherishing the land and the eventual disposition thereof. The granting clause, habendum and warranty are in the usual and regular form of

a deed, but clearly indicative of the intent of Mr. Wood is the following paragraph of the instrument which precedes the habendum clause.

"This Deed to this Tract No. 2, the James Hill home place, does not effect the Agency Agreement between me, George C. Wood, and C. B. Jeter recorded in Book 120, Page 16, the office of the Clerk of Court, Union County for this Deed to this Tract No. 2, the James Hill Home place, is to be recorded after my decease, observing the traditional and time-honored respect of my decease."

When it is remembered that the agency agreement referred to contemplated and provided for the subdivision and sale of portions of the tract of land by Jeter for Wood, we think it clear that the terms of the instrument itself reserved to Wood not just a life estate, as argued by Miss May, but the right to sell and dispose of various portions, if not all, of the property during his lifetime. In brief, neither the instrument itself, nor the circumstances surrounding its execution show an intent on the part of Wood to immediately pass to Miss May any estate or interest in the land. Moreover, the record shows that he continued after August 1, 1956, to exercise all rights of complete ownership with respect to the property, including executing a power of attorney whereby Jeter was authorized to sell all or any part of the property, and making a will disposing of the entire tract. We conclude that the lower court's finding of fact with respect to the intent of Mr. Wood is not only supported by the evidence, but is in accord with the clear weight and preponderance thereof.

All of the exceptions of the appellants being, in our view, without merit, it becomes unnecessary to discuss or consider the additional sustaining grounds urged by respondents. The judgment of the lower court is,

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.