THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Caroline C. McKee, Respondent,
 v.
 Jesse C. Brown, Appellant.
 
 
 

Appeal From Lexington County
 Clyde N. Davis, Jr., Master-in-Equity

Unpublished Opinion No. 2006-UP-084
Submitted February 1, 2006  Filed February 10, 2006    

AFFIRMED

 
 
 
 James Randall Davis, of Lexington, for Appellant.
 Paul D. Harrill and Andrew G. Melling, of Columbia, for Respondent.
 
 
 

PER CURIAM:  Appellant Jesse C. Brown appeals the Master-in-Equitys order declaring Respondent Caroline C. McKee the owner of a twenty-seven acre tract of land.  We affirm.[1]
FACTS
This action involves a dispute between Brown and McKee over the ownership of a twenty-seven-acre tract of land in Lexington County.  The tract lies between Browns and McKees properties.  Browns land is north of the tract, and McKees parcel is to the south.  McKees land includes some 340 acres which she inherited from her parents in 1973.  Brown has sold his land with the exception of the twenty-seven acres which he claims.  
McKee commenced this action to quiet title claiming to be the legal owner of the parcel.  She additionally claimed the land through adverse possession and acquiescence.  The matter was referred to a Lexington County Master-in-Equity.  The master found that McKee was the record owner of the tract, and that even if Brown had ever owned the property, McKee had proven ownership by adverse possession and acquiescence.  
McKee presented documentation dating back to 1929 which demonstrated her predecessors in title divided the property she now owns into four tracts.  The northern-most of the four tracts was a fifty-acre parcel which borders Browns land.  The deeds refer to a family home place, or old dwelling, situated approximately 200 yards from a family cemetery.  McKee and witness Franklin Corley each testified that their uncle, O.C. Crout, lived in the home place in the 1930s and 1940s.  Both McKee and Corley remembered visiting their uncle at the home place.    
McKee entered into evidence a plat worksheet from 1929 which references the 1929 deed that conveyed the fifty-acre parcel from Sarah Crout to O.C. Crout.  Grover and Gladys Corley purchased the 340 acres, which included the disputed parcel, in 1948.  In 1969, Grover Corley leased the home place and surrounding property to a motorcycle club.  After the land passed to McKee, she employed Westvaco, Inc. to plant, grow, and harvest timber on the disputed tract.  In 1978, Westvaco clear cut the twenty-seven acres and planted six-inch seedling pine trees.  
A deed in Browns chain of title lists the property as consisting of 139 acres and belonging to Thad Shealy.  In 1949, Shealy conveyed 157 acres to J. Collie Amick, ostensibly selling more land than he had received.  The 1949 plat states that it copies a 1920 plat, yet it inexplicably changes the southern boundary of the 139-acre parcel, increasing the tract to 157 acres.  All deeds after 1949 refer to Browns tract as consisting of 157 acres.
Brown and McKee are both in their late 60s or early 70s, and they both grew up around the property in question.  As long as either party can recall, a fence has existed along the northern boundary of the twenty-seven acres and the southern boundary of Browns land.  Brown subdivided and sold all of his property north of the fence prior to this lawsuit.  However, he  never attempted to subdivide or sell the disputed tract. Indeed, McKee introduced the deeds and surveys showing that Brown has sold over 150 acres of his property.  
The property in question has been surveyed numerous times throughout the years.  In 1988 George Todd performed a survey of McKees land and provided her with a plat.  Todd discovered a discrepancy in the tax maps, which indicated Brown owned the twenty-seven acre tract.  
Subsequently, Brown hired Mike Arant to survey the disputed tract.  Arant testified that Brown directed him to prepare a survey of a specific tax map parcel; he was not asked to research ownership issues.  In performing the survey, Arant placed two markers along the southern boundary of the disputed parcel.  He then discovered a survey which indicated McKees father, Grover Corley, was the owner of the twenty-seven acres.  Arant testified that he determined McKee was the rightful owner of the property, and upon informing Brown of his discovery, Arant was told not to complete his survey.  Arant did not remove the two markers which he claims he erroneously placed along the southern boundary.  
In 2001, McKee hired Cobb to survey her property.  Cobb did not utilize the deeds given to McKee or Brown, and he did not refer to the 1920 survey of Browns property or the 1929 survey of McKees land.  Cobb relied on the property markers erroneously placed by Arant.  Ultimately he redrew the tax map, omitting the home place from McKees property and leaving her with 308 acres.  McKee disagreed with Cobbs survey and commenced this action against Brown.  
STANDARD OF REVIEW
Initially, Brown asserts this is an appeal from an equitable action and that this Court may find facts in accordance with our own view of the evidence.  We disagree.
The instant case involves an action at law, not equity.  As stated by this Court in Eldridge v. City of Greenwood, 331 S.C. 398, 416, 503 S.E.2d 191, 200 (Ct. App. 1998), While an action to quiet title is usually one in equity, the main purpose of the complaint determines the character of the action.  The determination of title to real property is a legal issue.   Wigfall v. Fobbs, 259 S.C. 59, 367 S.E.2d 156 (1988) (citing May v. Jeter, 245 S.C. 529, 141 S.E.2d 655 (1965); Capell v. Moses, 36 S.C. 559, 15 S.E. 711 (1892)); see also Eldridge, 331 S.C. 398, 503 S.E.2d 191.  Therefore, in a case tried without a jury, the factual findings of a judge regarding title will not be disturbed on appeal unless found to be without evidence which reasonably supports the judges findings.  Wigfall at 60-61, 367 S.E.2d at 157; see also Townes Assn v. The City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) (In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judges findings.).
 Accordingly, our inquiry is limited whether the evidence reasonably supports the masters findings.  
LAW/ANALYSIS
Title
McKee presented evidence that she inherited 340 acres from her parents.  Absent the disputed tract, she would be left with only 308 acres.  Browns chain of title, in contrast, reveals that Thad Shealy was deeded 139 acres and later conveyed the identical tract which inexplicably contained 157 acres rather than 139.  The survey performed by Todd establishes McKee as the owner of the tract.  The survey by Arant was not completed, and Arants error in placing survey markers caused  Cobbs survey to go awry.  
Furthermore, the evidence showed that the home place was referenced in McKees chain of title, was occupied and leased by McKees ancestors, and was located on the twenty-seven acres.  Due to an apparent error in the tax assessors office, both parties paid taxes on the land.  Therefore, the payment of taxes does not help either partys claim.  The evidence amply supports the masters ruling that McKee is the legal owner of the disputed tract.
Adverse Possession
The master found that in addition to her claim by chain of title, McKee had proved ownership by adverse possession both under color of title and by demonstrating proof of actual, open, notorious, hostile, continuous, and exclusive possession of the property for the statutory period.  
Pursuant to S.C. Code Ann. § 15-67-220 (1976), 

 Whenever it shall appear (a) that the occupant or those under whom he claims entered into possession of premises under claim of title, exclusive of any other right, founding such a claim upon a written instrument as being a conveyance of the premises in question or upon the decree or judgment of a competent court and (b) that there has been a continued occupation and possession of the premises, or of some part of such premises, including in such instrument, decree or judgment under such claim for ten years, the premises so included shall be deemed to have been held adversely[.]

S.C. Code Ann. § 15-67-220 (1976).
McKee established through her chain of title that, at the very least, she possessed the land by color of title.  She further demonstrated continued occupation of the land for at least ten years.  McKee has been harvesting and growing trees on the twenty-seven acres since 1982.  Under section 15-67-230, land shall be deemed to have been possessed and occupied . . . when it has been usually cultivated or improved.  S.C. Code Ann. § 15-67-230 (1976).  Therefore, having met both (a) and (b) of section 15-67-220, the premises so included shall be deemed to have been held adversely.  
In addition, the master detailed evidence of actual, open, notorious, hostile, continuous, and exclusive possession by McKee for ten years or more.  See Miller v. Leaird, 307 S.C. 56, 413 S.E.2d 841 (1992) (outlining the elements of adverse possession).  Brown and another witness testified they planted trees on the tract in 1958.  However, any claim of adverse possession by Brown fails to survive McKees use of the land since 1982.  Thus, the evidence reasonably supports the masters findings. 
Acquiescence
Finally, the master ruled that if Brown ever had owned the disputed tract, McKee proved her acquiescence claim, which was pled in the alternative.  
Knox v. Bogan, 322 S.C. 64, 71-72, 472 S.E.2d 43, 47 (Ct. App. 1996), provides:

 It is well established that if adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for a long period of timeusually the time prescribed by the statute of limitationsthey are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.  In other words, such recognition of, and acquiescence in, a line as the true boundary line, if continued for a sufficient length of time, will afford a conclusive presumption that the line thus acquiesced in is the true boundary line.

Evidence established that both McKee and Brown treated the fence line as the true property boundary for more than ten years.  Moreover, Brown subdivided and sold all of his property up to the fence line.  McKee clear cut the land and planted trees with no objection by Brown.  This evidence reasonably supports the masters finding that the parties treated the fence line as the boundary.  
CONCLUSION
 
The record contains sufficient evidence to support the masters findings of fact.  Accordingly, the masters order is 
AFFIRMED.
HEARN, C.J., ANDERSON, and KITTREDGE, JJ., concur.
          

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.