## GOURDIN v. DEAS.

1. Where land was conveyed by deed to one in trust for D. for life, "and after her death to her issue to take *per stirpes*, their heirs and assigns forever," D. took an estate for life with a vested, transmissible remainder to her immediate issue, and the rule in Shelley's case does not apply.
2. Therefore at the death of the life-tenant, the land vested in possession in such of the children of D. as were *in esse* at the date of the deed or who were thereafter born to her, and the share of such of said children as predeceased the life-tenant passed to their issue, or, leaving none, to their heirs or devisees.
3. The issue of a child, who was living at the death of D., took no part of the land—"issue" in this deed meaning immediate issue, or, they being dead, their children, by representation, as shown by the use of the words "*per stirpes*."

Before KERSHAW, J., Charleston, November, 1886.

This was an appeal from the following Circuit decree :

The questions I am called upon to determine are: 1. What estate did Eliza C. Deas take in the said lot ? 2. Who take at

her death ?    3. If the fee was not in said Eliza C. Deas, what
portions of the property are liable to the mortgage above men-
tioned?    These questions have been very ably argued by the
counsel, and with the assistance thus afforded me I have had no
difficulty in arriving at the following conclusions.

The rule in Shelley's case does not apply here, for the reason
that the estate of the ancestor, Eliza C. Deas, is a trust estate,
and as said by Mr. Fearne, in his treatise on Remainders, p. 52 :
"Where the estate limited to the ancestor is merely an equitable
or trust estate and that to his heirs carries the legal estate, they
will not incorporate into an estate of inheritance in the ancestor,
as (in general) would have been the case, if they had been both
of one quality, that is, both legal or both equitable."    Here the
estate of Eliza C. Deas is equitable, the legal estate for her life
being in the trustee, but it is executed by the statute in the issue
of the said Eliza and is, consequently, a legal estate in them from
the time the same vested in remainder.    The interest of the
remaindermen and that of the ancestor being, therefore, of differ-
ent qualities could not coalesce, and the rule in Shelley's case is
inapplicable ; the remaindermen took as purchasers.    *Austin* v.
*Payne,* 8 *Rich. Eq.,* 12.

For another reason this construction must prevail.    The limi-
tation is to the said Eliza for life, "and after her death to her
issue to take *per stirpes,* his heirs and assigns."    The issue is
made the root of a new inheritance, and in such a case the rule
in Shelley's case does not apply.    *McIntyre* v. *McIntyre,* 16 *S.
C.,* 290.

It is manifest, therefore, that Eliza C. Deas had only a life
estate in the property in question, and could neither devise nor
change the estate after her death.    The remaindermen were her
issue and their heirs to take *per stirpes;* her children and grand-
children, the latter to take as representing their parents.    The
remainder was vested.    It vested in Robert C. Deas, who was
in *esse* at the date of the deed, at the moment of its execution.
As other children of Eliza C. came into being, the estate opened
to let them in and so it became vested in all children born to Eliza
C.    It was, however, only to vest in possession after the death of
Eliza C., and was subject to be divested by the death of any of

the children in her lifetime. In that case the interest of such decedent lapsed and fell into the corpus of the estate, and vested in the surviving remaindermen.

At the death of the life tenant the whole was distributable among the children and grandchildren of the said Eliza C. Deas then living, so that each child should take one portion, and the children of each deceased child among them, the share which their respective parents would have taken if then living. The estate thus limited is in fee simple, for the terms are "to her issue, &c., his heirs and assigns, to his and their only proper use, benefit, and behoof forever." No doubt, the word "*his*" should have been "their" before "heirs," &c. These propositions are sustained by ample authority; among others the following cases may be cited: *Wilson* v. *McJunkin,* 11 *Rich. Eq.,* 527; *Seabrook* v. *Gregg,* 2 *S. C.,* 69; *Williman* v. *Holmes,* 4 *Rich. Eq.,* 478; 4 *Kent Com.,* 202-206; 2 *Wash. Real Prop.,* 230-231; *Glenn* v. *Glenn,* 21 *S. C.,* 308; *Britton* v. *Johnson,* 2 *Hill Ch.,* 431.

This furnishes a ready solution for the inquiry: Who take the estate at the death of Eliza C. Deas? There were eight children born to her, to wit: Robert L. Deas, Zephaniah Deas, John S. Deas, James C. Deas, Maria S. Eaden, Eliza J. Ready, Jeannette A. Deas, and Mary Clara Mason. Of these Robert L. and Zephaniah Deas died in the lifetime of their mother, Eliza C., leaving no issue. John S. Deas died in the lifetime of the said Eliza C., leaving five children, all of whom survived the said Eliza C. Deas.

The estate, therefore, was divisible into six shares or portions, of which James C. Deas is entitled to one share, Maria S. Eaden to one share, Eliza J. Ready to one share, Jeannette A. Deas to one share, Mary Clara Mason to one share, and the children of John S. Deas, above named, to one share among them. The portions of those remaindermen who joined in the mortgage, are liable to the mortgage debt, to wit: James C. Deas, Jeannette A. Deas, Mary C. Mason, and Eliza J. Ready.

It is ordered, adjudged, and decreed, that the lot of land described in the complaint be divided and distributed among the parties entitled in accordance with the principles herein adjudged, &c.

*Messrs. Trenholm & Rhett,* for Mrs. Allen.

*Mr. H. A. DeSaussure, jr.,* for Mrs. Julia W. Deas.

*Messrs. B. H. Rutledge, jr.,* and *Simons & Cappelmann,* for the Mason children.

November 28, 1887. The opinion of the court was delivered by Mr. JUSTICE McIVER. The questions presented by this appeal arise upon the construction of a deed whereby certain real estate was conveyed to the plaintiff "in trust for Eliza C. Deas, wife of R. C. Deas, to her sole, separate, and exclusive use, free from the debts, contracts, or liabilities of her present or any future husband, for life; and after her death to her issue, to take *per stirpes, his* heirs and assigns, to his and their use, benefit, and behoof forever." The word "his" which we have italicized in this quotation is manifestly a clerical error, and should have been "their"; and this seems to be conceded by all parties.

Eliza C. Deas had in all eight children, viz.: Robert L., Zephaniah, John S., James C., Maria S. Eaden, Eliza J. Ready, Jeannette A. Deas, and Mary Clara Mason, of whom, as is stated in the "Case," "some were *in esse* at the time of this conveyance and some were born subsequently," but it is not there stated which of them were *in esse* at the date of the deed, and which were born subsequently, though it is stated in the Circuit decree that Robert L. Deas was *in esse* at the time the deed was executed. Robert L. Deas died in 1865, without issue, leaving a will whereby he gave all his right, title, and interest in the property covered by the deed to his wife, who is now the defendant, Hannah G. Allen, one of the appellants herein. Zephaniah Deas died intestate previous to his mother, without issue, leaving a widow, the defendant, Julia W. Deas, who is also one of the appellants. John S. Deas died intestate previous to his mother, leaving a widow, the defendant, Fanny Deas, and six children, who are likewise defendants. James C. Deas is still living, unmarried, never having had issue. Maria S. Eaden is still living, but without any issue. Eliza J. Ready is still living having issue, two sons, who are defendants. Jeannette A. Deas

is still living and has issue, five children, who are defendants, but make no claim. Mary Clara Mason is still living, having issue seven children, the youngest of whom was born subsequent to the death of the life-tenant, Eliza C. Deas, and these children are defendants and appellants herein.

Eliza C. Deas having executed a mortgage to the defendant, Martha S. Eaden, on the property in question, in which the defendants, Jeannette A. Deas, Mary Clara Mason, Eliza J. Ready, and James C. Deas joined, departed this life in 1886, having, by her will, of which the defendant, H. E. Young, is executor, undertaken to devise the property covered by the deed to the defendants, Jeannette A. Deas and Mary Clara Mason. Soon after her death the plaintiff, as trustee, instituted this action, to which all persons who could by any possibility have any interest in the property are made parties, for the purpose of obtaining the instructions of the court as to the disposition of the property after the death of the life-tenant.

The Circuit Judge held that Eliza C. Deas took an estate for her life only, with remainder to her issue, and therefore she could neither devise nor charge the estate after her death. Hence her attempt to devise it must be regarded as futile, and the mortgage bound only the shares of such of the remaindermen as joined in the mortgage. The remainder he held was a vested remainder, vesting at the time of the execution of the deed in such of the issue as were then *in esse* and opening to let in such other issue as were born during the life-time of the life-tenant. But he held that the remainder was only to vest in possession after the death of the life-tenant and was divested by the death of any of her children during her life-time. Hence he held that at the death of Eliza C. Deas the property was distributable amongst her children and grandchildren then living, so that each child should take, in fee simple, one portion, and the children of each deceased child should take, in fee simple, the share which their respective parents would have taken, if then living, thus excluding the representatives of Robert L. Deas and Zephaniah Deas who had both died without issue, in the life-time of the life-tenant. He, therefore, adjudged that the property be divided into six equal shares, of which James C. Deas, Maria S. Eaden, Eliza J. Ready, Jean-

nette A. Deas, and Mary Clara Mason should each take one share, and that the children of John S. Deas, deceased, should take, amongst them, the remaining share: and that the shares of James C. Deas, Jeannette A. Deas, Mary Clara Mason, and Eliza J. Ready, who had joined in the mortgage to Maria S. Eaden, should be charged with the mortgage debt.

From this judgment the defendants, Hannah G. Allen, as devisee of Robert L. Deas, and the defendant, Julia W. Deas, as one of the heirs at law of Zephaniah Deas, appeal upon the ground that the Circuit Judge erred in excluding them as such from any participation in the divison of the property. The children of Mary Clara Mason also appeal upon the ground that the Circuit Judge erred in holding that they are not entitled to share with their mother the portion coming to the stock represented by her.

We agree with the Circuit Judge that Eliza C. Deas took only an estate for her life with remainder to her issue, the rule in *Shelley's Case* not applying for the reasons given. Indeed, this does not seem to be questioned by any of the appellants, and the main inquiry is as to the character of the remainders—whether they were vested or contingent, and if vested, whether they were liable to be divested by the death of any of the children, without issue, during the life of the life-tenant. The authorities in this State appear to be somewhat conflicting, but it seems to us that the more recent cases support the view that the remainders vested in such of the issue as were *in esse* at the date of the deed, at that time, opening to let in other issue as they came into existence, whose interests were also vested at their birth, and that such vested interests were not divested by the death of any such issue, leaving no issue, in the life-time of the life-tenant, and hence that the Circuit Judge erred in excluding the representatives of Robert L. Deas and Zephaniah from any participation in the division of the property.

*Myers* v. *Myers*, 2 *McCord Ch.*, 214; 16 *A. D.*, 648 (1827). The devise was to "my grandchildren, being the lawful issue" of my son David, "to them and their heirs forever." At the date of the will David had two children, his wife being then pregnant with another, who was born previous to the death of testator. After the

death of testator David had six other children; and the question in the case was whether these six were entitled under the will. The court held that the general rule was "that where there is an indefinite period for distribution, the legacy vests at the death of the testator, and that none can take except those *in esse* at that time. But that where there is a fixed period when the distribution is to take place * * * then all the children born before that time will come in for a distributive share, and such as are subsequently born will be excluded." The court having determined that the period for distribution was the death of testator, held that the six *post nati* children were excluded. *Note.* It will be observed that the exact point raised here was not decided in that case, inasmuch as none of the children had died after the death of the testator, though the language used in stating the rule, "none can take except those *in esse* at the time" fixed for distribution would seem to exclude those who died before that time.

*Swinton* v. *Legare,* 2 *McCord Ch.,* 440 (1827), the legacy was to A for life, "and after her death to be equally divided among the survivors of her children, to each of them share and share alike, as they shall attain the age of 21 or marriage." The question was whether the children of Hugh, who was born in the life-time of testatrix, but died before his mother, the life-tenant, could take under the will. *Held,* that they could not, under the rule that "where property is given to a class of persons, and not by name, it will take in all who shall answer the description at the time the gift shall take effect." But from what is subsequently said in the opinion it would seem that this conclusion was due to the fact that the gift in remainder was, not to the children of the life-tenant generally, but to her *surviving* children.

*Cole* v. *Creyon,* 1 *Hill Ch.,* 311 ; 26 *A. D.,* 208 (1833), testator devised and bequeathed his estate to his wife for life, and at her death, "that it be equally divided between Henry and Elizabeth Cole's children, and Alex. Creyon, *viz.,* the offspring of said Elizabeth Cole's body, and no other, to be retained in the hands of my executors until the age of 21 years, or marriage, which shall first happen, then to be made over to them lawfully, each legatee receiving their just *quota* of the same, which I will and bequeath to them and their heirs forever." The only question in

the case was whether the Cole children took among them one-half and Creyon the other half, or whether they took *per capita*. Held, that Creyon took half and the Coles the other half. But while this was the only point decided, the reasoning of Harper, Ch., throws light on the question we are concerned with. (See his reasoning, as well as the cases which he cites, viz., *Godfrey* v. *Davis*, 6 *Ves.*, 49; *Hughes* v. *Hughes*, 14 *Id.*, 256.) But the learned chancellor adds: "There would be reason for making a different construction, and probably a different one ought to be made, when the child dying (before the period for distribution) has left children, and this also to effectuate the intention, for it cannot be supposed that the testator intended the object of his bounty not to be capable of transmitting to his children so as to provide for them."

*Conner* v. *Johnson*, 2 *Hill Ch.*, 41 (1834), the devise was to the wife for life, and after her death to seven named persons and the children of Elizabeth Carn (now Mrs. Conner), and the question was how the estate in remainder was to be divided. *Held*, that the division was to be into eight shares, of which each of the persons named would take one, and the remaining share would go to such of the children of Elizabeth Carn as were living at the time of the death of the life-tenant, excluding such of the said children as predeceased the life tenant. This was upon the ground that the shares vested at different times—those of the remaindermen who were *named* vesting at the death of testator, while the share given to *a class of unascertained* persons—the Carn children—could not vest until the death of the life-tenant, and hence any child of Mrs. Carn who died before the life-tenant had no transmissible interest.

*Rutledge* v. *Rutledge*, *Dud. Eq.*, 201 (1838), property was settled by a marriage settlement for the joint use of husband and wife, and the survivor of them for life, and after the decease of both to the use of the issue of the marriage, to be divided amongst them, share and share alike; if no issue of such marriage, or if such issue should die during the lives of husband and wife, or during the life of the survivor, then to the use of such survivor, his or her heirs and assigns forever. The immediate issue of the marriage were seven children, of whom three died

during the lives of their parents, intestate and without issue, the father then died, leaving his widow and four children surviving. Of these two died during the life of the widow without issue and unmarried; another, Edward by name, leaving his widow and six children surviving; and another, Nicholas, died, leaving his widow but no child. The mother then died, leaving no other issue of her body but the six children of Edward. The question was whether the issue of Edward took the whole estate, or whether the widow of Nicholas could come in; and this depended upon the question whether the issue of the original marriage took as they were respectively born vested and transmissible interests, and it was held that they did, but somewhat strange to say, it was also held that the estate was distributable *per capita*, and not *per stirpes, viz.*, that it was to be divided into thirteen equal parts, of which each of the children of Edward took one part, and the representatives of each of the other children who had died without issue took one equal part. This case appears to be exactly in point, and is in conflict with the reasoning of Harper, Ch., in *Cole* v. *Creyon* and *Conner* v. *Johnson*, to which no allusion is made.

*Bentley & Bradley* v. *Long*, 1 *Strob. Eq.*, 43; 47 *A. D.*, 523 (1846), the devise was to the wife during life or widowhood, "and at her death or marriage to be equally divided amongst our children." One of the children, Henry, survived the testator, but predeceased the life-tenant, and the question was whether his interest was so vested as to pass to his administrator. *Held,* that it was, on the authority, solely, of *Bankhead* v. *Carlisle* (1 *Hill Ch.*, 357), as no other authority is cited and no reason given. But on turning to the case of *Bankhead* v. *Carlisle*, it will be found that there the testator, after giving specific legacies to his ten children, of whom Gideon was one, devised to his wife during her life or widowhood all the rest of his estate, and at her death or marriage "to be equally divided amongst my children *as above named*," and the fact that the children were *named* seems to have been the turning point of the case.

*Wessenger* v. *Hunt*, 9 *Rich. Eq.*, 459 (1857). Testator gave his property to his wife for life, and at her death to be equally divided among my children and grandchildren, excluding certain

of them by name; one of testator's children, Richard, prede-
ceased the life-tenant, leaving no issue, and one of the grandchil-
dren, and perhaps another, was born after the death of the life-
tenant. The chancellor on Circuit held that the representatives of
Richard and the children and grandchildren living at the death
of the life-tenant (except those specially excluded), were entitled
to share equally in the distribution of the property, which should
be *per capita*, and not *per stirpes*. On appeal no question seems
to have been made as to the right of the representatives of Rich-
ard, who had predeceased the life-tenant, to share in the divi-
sion, the only questions being : 1st. Whether any grandchildren
could come in except those who were living at testator's death.
2d. Whether the distribution should be *per capita* or *per stirpes*.
The court held that all the grandchildren who were in being at
the death of the life-tenant, the period fixed for distribution, were
entitled to come in—the court saying that the rule was that
"where the partition is postponed by the interposition of a life
estate, or to some future day for any other cause, all who can
bring themselves within the description at the period of distribu-
tion are entitled to participate in the distribution." NOTE.—If
this be the rule, it is difficult to see how the representatives of
Richard could come in, as they certainly could not bring them-
selves within the description—children or grandchildren—at the
period of distribution, though Wardlaw, Ch., in the Circuit
decree, does say : "It is clear on authority that the children and
grandchildren of testator living at his death took vested interests
in the remainder, transmissible to their representatives, subject
to diminution by increase of the objects of bounty, or, in other
words, vested estates, opening to let in all of the classes who
might come into existence before the period of distribution."
And then proceeds to state the rule where the subject of the be-
quest is to be distributed at a time future to the death of the tes-
tator, as, for instance, at the death of an intermediate life-tenant,
pretty much as it is stated in the foregoing quotation from the
opinion of the Court of Appeals.

*Wilson* v. *McJunkin*, 11 *Rich. Eq.*, 527 (1860), appears to
be precisely like the case under consideration, with two excep-
tions : 1st. That the limitation was by a will, while here it was

by deed.   2d.  There the remainder was to the *children*, while here it is to the *issue* of the life-tenant.   In that case testator devised certain property to his executors in trust for the sole and separate use of his daughter, Nancy, for life, "and at her death to be equally divided amongst her children in fee simple."   One of Nancy's children, Mary, who was living at the time of testator's death, died during the life of her mother, leaving a husband but no issue, and the question was whether the representatives of Mary could take her share upon the death of the life-tenant.   Held that they could, her interest being a vested transmissible interest.   Chancellor Dargan, in his Circuit decree, which was simply adopted by the Court of Appeals, after stating the question, said : "I had thought [this question] so well settled as not to admit of controversy or serious doubt; so plain is it, in fact, that it does not, so far as I am informed, seem to have been raised in any reported decision in South Carolina.   But when we turn to the English authorities, we find the principle so well settled as to account for the question not having been raised in our courts."   The only case which he cites is *Doe* v. *Perryn* (3 *T. R.*, 484), where the reason given is that any other conclusion would defeat the interests of grandchildren, which reason would not apply in our case, where the remainder is to the issue, which would include grandchildren.

*Haynsworth* v. *Haynsworth*, 12 *Rich. Eq.*, 114 (1860), was a case in which a donor by deed conveyed certain property to a trustee for the sole and separate use of the donor's granddaughter, M., wife of H., for life, and after her death to the use of H. for life, and after his death to the use of the children born, or to be born, of said M., and their heirs, but should the said M. and H. both die without leaving children living at the time of their decease, born of the said M., then over to two other grandchildren. of the donor.   M. died leaving H. and one child surviving her, and then the child died, leaving H. surviving him.   Held, that the child took a vested transmissible interest, which became indefeasible on the death of M., upon the ground that the limitation over could only take effect in the event of *both* M. and H. dying without leaving a child, and as *one* of them—M.—died leaving a child, the limitation over never could take effect.   The

implication is, that if the child had died while both M. and H. were alive, his vested interest would have been defeated. In this case *Rutledge* v. *Rutledge, supra,* is relied upon to show that the child took a vested interest.

*Hayne* v. *Irvine,* 25 *S. C.,* 289 (1886). Testator gave to his two daughters, E. and M., certain property, real and personal, and in case "either of them should die without issue lawfully begotten, and living at their, or either of their, deaths, then, and in that case, all the property * * * shall be given to the lawful heirs of my daughters, Mrs. Nancy Hill, the wife of William R. Hill, and Mrs. Frances Irvine, the wife of Dr. O. B. Irvine, to be divided equally between the children of my said daughters, Mrs. Hill and Mrs. Irvine, to have and to hold to them and their heirs forever, share and share alike." Mrs. Irvine died, and then Pinckney, her son, died, leaving children, and afterwards both E. and M. died without issue. The question was whether the children of Pinckney could come in and share with the children of Mrs. Irvine living at the time of the death of E. and M. The court, after saying that the terms "heirs" was used, not in its technical sense, but as synonymous with the term "children," held that as the issue of Pinckney did not answer the description of *children* of Mrs. Irvine, those who did answer that description at the time of the death of E. and M. took to the exclusion of Pinckney's children, under the authority of *Wessenger* v. *Hunt, supra,* which, it is said, established the doctrine "that a bequest to be distributed at a future time to the death of the testator, to wit, at the death of an intermediate life tenant, all who answer the description at the time of the distribution are the parties alone entitled." It will be observed that Wardlaw, Ch., does not use the word "alone" in the case relied on ; but, on the contrary, he held that the representatives of a child who had predeceased the life-tenant were entitled to come in. It will also be observed that the intermediate estate of E. and M. was not a life estate, but so far as appears an estate in fee, and the limitation over must be regarded as an executory devise,- and not as a remainder.

*Doe ex dem. Barnes* v. *Provoost* (4 *Johns. Rep.,* 60 ; 4 A. D., 249), is a case of high authority, where the testator devised real

estate to his daughter, C., "for and during the term of her natural life, and immediately after the death of the said C., I give the above devised premises unto and among all and every such child and children as the said C. shall have lawfully begotten at the time of her death, in fee simple, to be equally divided between them share and share alike." It was held that the four children of C., who were living at the date of the will, and at the death of the testator, took vested remainders, which opened to let in other children of C. subsequently born, and hence that the children of a daughter who predeceased the life-tenant were entitled to the share which their mother would have taken if she had survived the life-tenant. Spencer, J., dissented, holding that the remainders to the children of C. were contingent, and hence the children of the deceased daughter were not entitled to anything.

If the remainder once vested in Robert L. Deas, we see nothing in the terms of the deed which would divest it in case he should die during the life-time of the life-tenant without issue ; for there is no limitation over in case such an event should happen, but, on the contrary, the remainder vested in him was a fee simple, and if his estate became divested by reason of his death during the life of the life-tenant, it must necessarily have reverted to the grantor—a construction which would be wholly inadmissible. It will be observed that the remainder is to the issue of Eliza C. Deas, *not* to her *surviving* issue, or to her issue *then living*, which would have been the words that most naturally would have been used if the intention had been to confine the gift to such issue only as might be *in esse* at the time of the death of the life-tenant ; but, on the contrary, as we have said, the remainder is to the issue generally in such terms as import a fee simple, which was to vest *in possession* at the time of the death of the life-tenant, and hence, as was said in *Rutledge* v. *Rutledge, supra,* "necessarily all falling within the description of issue up to that time are entitled to an equal participation in the estate."

Indeed, we do not see how this case can be distinguished from that, and we do not see that any subsequent case has in any way shaken its authority ; but, on the contrary, we do find it expressly recognized in the comparatively recent case of *Haynsworth* v. *Haynsworth, supra.* The only point of difference between this case

and that of *Rutledge* v. *Rutledge* is that there there was a limitation over in the event that there was no issue of the marriage, or in the event that all of such issue should die during the life of the husband and wife, while here there is no such limitation, but this only makes the present case stronger than that. So, also, the case of *Wilson* v. *McJunkin, supra*, is, in principle, the same as the present case; for we do not see how the points of difference hereinbefore pointed out, can affect the present inquiry.

The only remaining inquiry is that raised by the appeal of the Mason children. Although this question does not seem to have been considered by the Circuit Judge in his decree, yet as he directed such a mode of division as would exclude the children of Mrs. Mason from any participation therein, we suppose it is competent for them to raise the question by appeal. There is no doubt that the term "issue" generally includes all lineal descendants, and is a much more comprehensive term than "children" or "grandchildren." Hence if the remainder here had simply been to the issue of Eliza C. Deas, with nothing more, the children of Mrs. Mason being a part of such issue, would have been entitled to share in the division of the property at the termination of the life estate, in which case all who could bring themselves within the class described as issue would have been entitled to share equally in such division, which would have been *per capita*, and not *per stirpes*. See *Wessenger* v. *Hunt, supra*, and the cases therein cited.

But while this is the general rule, yet it is well settled that where there is anything in the context indicating an intention to restrict the broad signification of the term "issue," it will be so restricted. *Burleson* v. *Bowman*, 1 *Rich. Eq.*, 111. Now, in this case the remainder is not simply to the issue of Eliza C. Deas, but it is "to her issue *to take per stirpes*, their heirs and assigns," and the practical inquiry is, what is the effect of the superadded words? One effect, undoubtedly, is to prevent a division *per capita* amongst the issue of the life-tenant; but we think another manifest effect of these superadded words is to confine the division to the *immediate* issue, and the children of such immediate issue as predeceased the life-tenant, who can only take *per stirpes, as representatives* of their deceased parents.

There is nothing whatever to indicate that there is to be any subdivision of any of the shares, and as it is perfectly certain that the division must be *per stirpes*, and not *per capita*, we think it necessarily follows that the children of Mrs. Mason, who is still living, have no right to participate in the division, but that their mother is alone entitled to the one-eighth of the property which, under our view, goes to that branch of the issue.

The judgment of this court is, that the judgment of the Circuit Court be reformed in accordance with the views herein announced, and that for this purpose the case be remanded to the Circuit Court.