## 20642

Walter H. CHILES, Respondent, v. Georgia Sykes CHILES, Grace Lewellyn Lovell Miller, Samuel George Lovell, Jr., Lawrence Edward Gray, John Marion Gray, Jr., Mary Margaret Chiles Burtis, Sarah Hale Chiles Shelburne, John Parham Chiles, Walter Hale Chiles, Jr., Paul Foster Chiles, John Russell Chiles, Jr., Julia Chiles Lovell, Mary Chiles Gray, Julia Carolyn Lovell, a minor over the age of fourteen years, and Walter Hale Chiles, III, a minor under the age of fourteen years, Baptist Foundation of South Carolina, Inc., and the Attorney General of the State of South Carolina, of whom Walter Hale Chiles, III, a minor under the age of fourteen, is Appellant.

(242 S. E. (2d) 426)

*H. T. Abbott, Jr.,* of Conway, *for Appellant,*

*Barnes, Austin & Ellison,* of Columbia, *for Respondent,*

March 15, 1978.

RHODES, Justice:

This is an action instituted by the settlor of an irrevocable *inter vivos* trust to modify the trust instrument by extinguishing the interests of certain beneficiaries. The lower court granted the modification and only Walter Hale Chiles, III, a minor under the age of fourteen and a beneficiary under the trust, appeals contending the lower court erred in extinguishing his interest in the trust. We agree and reverse only that portion of the lower court's order which extinguishes his interest.

The trust instrument in question was executed by the respondent, grandfather of the appellant, as settlor with the Baptist Foundation of South Carolina, Incorporated, designated trustee.[1] The trust was funded with securities which, at the time of the transfer in trust, had a value in excess of two million dollars. By the terms of the trust, the settlor is to receive distributions during his lifetime and, upon his death, distributions are to be made to specified beneficiaries during their lifetime. The appellant is one of these latter beneficiaries.

Upon termination of the intermediate beneficial interests, the trust provides that "all corpus shall be used as a perma-

---

[1] The original trust instrument was executed on November 28, 1969. On June 3, 1970, by order of the circuit court, the instrument was modified to conform with changes in the tax laws. The instrument was subsequently modified on January 25, 1971 by order of the circuit court to change the period of payments to Walter Hale Chiles, III, from a designated period to payment for his natural life. It is the trust instrument as modified by these prior actions that is before us for consideration.

nent endowment and the income derived from this entire trust (after special benefits have been paid according to the terms of this trust) shall be, at least annually, distributed to and paid over to the Lottie Moon Chrismas Offering of the Southern Baptist Convention."

The document specifically provides that the trust is irrevocable.

According to the respondent's petition filed in the lower court, his purpose in establishing the trust was to provide a charitable gift to the Lottie Moon Christmas Offering. To effectuate this purpose, the respondent seeks to extinguish the interests of the intermediate beneficiaries because, according to his allegations, he "has been advised by the Internal Revenue Service that the Trust Agreement as presently constituted does not effect the purpose of Petitioner as far as being a charitable contribution in that there will be no recognizable gift to the Lottie Moon Christmas Offering of the Southern Baptist Convention upon the death of the last of the non-charitable contingent beneficiaries."

Service was had upon all of the numerous intermediate beneficiaries and the Attorney General of South Carolina.[2] Only the Attorney General and the appellant, through his duly appointed Guardian *Ad Litem,* responded to the respondent's petition.

Based primarily on the testimony of the respondent as to his intentions, the lower court found his clear intent at the time of the creation of the trust was to create a charitable gift to the Lottie Moon Christmas Offering. The respondent's accountant testified that no corpus would remain for the benefit of the charity if the prior distributions to the settlor and intermediate beneficiaries should be made in accord with the trust provisions. Based on this showing, the lower court held that the settlor's intent could be achieved

---

[2] The Attorney General was made a party since he is charged with certain responsibilities with respect to charitable trusts under Title 21, Chapter 31 of the 1976 Code of Laws of South Carolina.

only by extinguishing the interests of the intermediate beneficiaries.

As the case stands before us on appeal, the only question presented and the only one we consider is whether it was error to extinguish the interest of Walter H. Chiles, III.[3]

The respondent points out that a court of equity may modify a trust upon the occurrence of emergencies or unusual circumstances in order to carry out the settlor's intent. He contends that, in the present case, his intent can be effectuated only by excluding the intermediate beneficial interests and, thus, the lower court acted properly in extinguishing the interest of the appellant.

It is true that a court of equity has the power to alter or modify a trust to effectuate the intent of the settlor. 89 C. J. S. Trusts § 87(b) (1955). However, it is the duty of the courts to preserve, not destroy, trusts and to see to it that the rights of infants are not injuriously affected. *Bettis v. Harrison,* 186 S. C. 352, 195 S. E. 835 (1938); *Dumas v. Carroll,* 112 S. C. 284, 99 S. E. 801 (1919). Accordingly, the exercise of this power "can be justified only by some exigency or emergency which makes the action of the court in a sense indispensable to the preservation of the trust . . . ." 89 C. J. S., *supra.*

In order to determine whether the requested modification is justified in the present case, it is, first, necessary that we ascertain the intent of the settlor; otherwise, we could not give it effect.

The respondent has testified extensively in the court below as to his intent in creating this trust. However, the respondent has overlooked the cardinal rule of ascertaining intent. "[R]esort is first to be had to its [the instrument's] language, and if such is perfectly plain

---

3 Aside from the fact that the other intermediate beneficiaries are not parties to this appeal, the extinguishment of their interests would, in no way, detrimentally affect the interest of the appellant herein and we need not consider the propriety of the lower court's action with respect to their interests.

and capable of legal construction, such language determines the force and effect of the instrument. Extrinsic facts cannot, in such cases, give the instrument a different construction from that imported by its terms." *Superior Auto. Ins. Co. v. Maners,* 261 S. C. 257, 263, 199 S. E. (2d) 719, 722 (1973) ;[4] Restatement (Second) of Trusts § 38 (1959) (see especially com. a) ; 89 C. J. S., *supra.* "[T]he possibility that the trustor may be alive should have no effect upon the interpretation to be given the trust instrument. Its construction depends upon the trustor's intent at the time of execution as shown by the face of the document and not on any secret wishes, desires or thoughts after the event." *Brock v. Hall,* 33 Cal. (2d) 885, 206 P. (2d) 360, 11 A. L. R. (2d) 672, 675 (1949).

The logic of these principles of construction is evidenced by the present case. The trust instrument expressly states that the trust is irrevocable. To allow subsequent declarations of intent to control construction when the language of the instrument itself is clear would render the irrevocability provision a nullity and allow the settlor to revoke or modify a trust at will in direct contravention of the recognized rule that a trust cannot be revoked unless such a power is expressly reserved in the instrument.[5] *Alderman v. Alderman,* 178 S. C. 9, 181 S. E. 897 (1934).

Although the respondent testified that his intent was to benefit the Lottie Moon Christmas Offering, it is manifest from the language of the document that he also intended to provide for his grandson during his lifetime. Although it may be true, as the respondent contends, that no corpus will remain after the death of the appellant, there

---

[4] Although this case involved a contractual agreement and not a trust instrument, the general rules of construction which apply to written instruments generally, apply likewise to trust instruments, 76 Am. Jur. (2d) Trusts § 17 (1975).

[5] Although there are certain exceptions to the rule that a settlor cannot revoke a trust unless he expressly reserves such a power, Restatement (Second) of Trusts § 330(2) (1959), there are no circumstances present in the instant case which brings it within any recognized exception.

is nothing in the instrument to indicate this is to affect the benefits to be paid his grandson, much less warrant their being terminated. The charity was given only a remainder interest and the instrument specifically states that the charity is to receive the benefits of this interest only "after special benefits have been paid according to the terms of this trust." It is clear that the term "special benefits" includes those payable to the appellant and that they take precedence over those payable to the charity. Because of this, extinguishment of the appellant's interests would not only fail to effectuate the clear intent expressed by the settlor in the trust instrument, but would, in fact, defeat that intent.

As pointed out above, the respondent's petition in this action stated that he "has been advised by the Internal Revenue Service that the Trust Agreement as presently constituted does not effect the purpose of Petitioner as far as being a charitable contribution . . . ." Under the circumstances, we conclude that this litigation has been largely motivated by tax considerations. In view of this, we feel the following quotation from *Davison v. Duke University,* 282 N. C. 676, 194 S. E. (2d) 761, 57 A. L. R. 3d 1008 (1973), is pertinent and we quote with approval:

"Absent circumstances allowing modification, however, we agree with this statement in the case of *In Re Estate of Benson,* 447 Pa. 62, 285 A. (2d) 101:

" 'As to the obviation of taxes, it is incontestable that almost every settlor and testator desires to minimize his tax burden to the greatest extent possible. However, courts cannot be placed in the position of estate planners, charged with the task of reinterpreting deeds of trust and testamentary dispositions so as to generate the most favorable possible tax consequences for the estate. Rather courts are obliged to construe the settlor's or testator's intent as evidenced by the language of the instrument itself, the overall scheme of distributions, and the surrounding circumstances.' "

282 N. C. at 716, 194 S. E. (2d) at 786, 57 A. L. R. 3d at 1042.

To the extent that it extinguishes the interest of appellant, the order of the lower court is reversed.

Reversed in part.

Lewis, C. J., and Littlejohn, Ness and Gregory, JJ., concur.