0936

Donna Hale BONNEY, Respondent-Appellant v. John D. GRANGER, as Executor under the Will of Hilda Hale Granger, Hilda Hale Granger (deceased), Individually and as Trustee under Written Declaration of Trust executed by W. R. Hale on September 30, 1927, Keith S. Bonney, Jr., Laura Ann Bonney, John Hale Granger, Individually and as Executor under Will of Hilda Hale Granger, deceased, William Randolph Hale, III, William Randolph Hale, IV, Thomas Michael Hale, Leslie Suzzanne Hale Hubbard, Mark Alan Hale, Nancy Ann Hale Riley, Edward Patterson Riley, III, Elizabeth Anne Riley, Jack McKee Hale and Marjorie Hale Pointer Ellmore, Jayne Hale Armstrong, Jeffrey Paul Ellmore, Polly Lynn Ellmore, Philip Benjamin Ellmore, and Leigh Erin Hubbard, Amber Rae Hale, David Granger and Jennifer Granger, minors and as representatives of all unborn great-great-grandchildren of W. R. Hale, deceased, Defendants-Respondents, Appeal of W. R. HALE, III, is Appellant-Respondent, and John D. Granger and John Hale Granger, Individually and as Executors, are Respondents-Appellants.

(356 S. E. (2d) 138)

Court of Appeals

310

*George F. Townes,* Pickens, *for appellant-respondent.*

*W. H. Arnold, Ben G. Leaphart,* of *Love, Thornton, Arnold & Thomason, and James R. Gilreath,* Greenville, *for respondents-appellants.*

*E. P. Riley, Jr.,* and *Charles R. Stewart, J. D. Todd, Jr.,* of *Leatherwood, Walker, Todd & Mann,* and *W. Lindsay Smith,* Greenville, *for defendants-respondents.*

Heard Nov. 11, 1986.

Decided April 13, 1987.

BELL, Judge:

This is an action to construe the terms of a written inter vivos trust, to determine the liability of the putative trustee for alleged breach of trust, and to provide for disposition of

the trust property now that the trust has terminated.

W. R. Hale, Sr. was born in 1859. Of his marriage to Annie R. Hale, three children were born: William R. Hale, Jr., in 1882, Fred Hale, in 1889, and Hilda Hale Granger, in 1896.

On September 30, 1927, Hale executed a written Declaration of Trust which is the subject of this suit. It was recorded in the RMC Office for Greenville County. At the time he executed the trust, Hale was almost sixty-eight years old. His wife, who was several years younger, was still living. His elder son, William, was thirty-five and had one child, W. R. Hale, III. The younger son, Fred, had died in 1922, leaving a daughter, Marjorie. Hilda was thirty-one years old and unmarried.

The trust instrument appointed Hale to act as trustee. His son, William, was designated as sole successor trustee if Hale died before final distribution of the trust estate. Hale reserved no right to amend or revoke the trust. Likewise, the instrument gave the trustee no power to appoint a successor trustee.

The stated purpose of the trust was to assure Hale's family of means of support and to provide against their becoming dependent by reason of any accident or misfortune which might befall him. To this end, section 3 of the declaration of trust provided for the net income of the trust

> to accumulate and be reinvested as a part of said trust fund during the life of my wife and life of my two children or of either of them; with full power, however, to pay to my said wife from time to time during her lifetime the entire net income of said trust estate, either current or previously accumulated ... as I may think best, and after the death of my said wife, to expend for the joint or separate maintenance and support of my issue, or any one or more of them the whole of such net income, either current or previously accumulated, ... as I may think advisable.

This provision was to operate during the lives of Hale's wife and two living children. Section 4 directed that after the death of Hale's wife and upon the death of his two children, the trustee was

> to pay over and distribute all of said principal then

remaining in said trust fund, with accumulated income, if any, to and among my issue, share and share alike, per stirpes, free and discharged of all trust.

Hale's wife and his son, William, both died in 1941. Hale died in 1947. Hale's daughter, Hilda, died in 1984. At the time of Hilda's death there were living all six grandchildren of Hale: viz. the daughter of Fred, four children of William, and a son of Hilda. There were also sixteen great-grand-children and great-great-grandchildren, all descendants of the six living grandchildren.

## I.

The first question for our decision is whether the trust assets should be divided into three parts or six parts for purposes of distribution. The master held the trust instrument provides for a division into six parts. We affirm.

Hale directed that upon the death of his children, the trust would be terminated and the assets distributed "to and among my issue, share and share alike, per stirpes."

The term "issue," unless otherwise limited or qualified, embraces all lineal descendants of the settlor. *Woodle v. Tilghman*, 234 S. C. 123, 107 S. E. (2d) 4 (1959); *Corbett v. Laurens*, 26 S. C. Eq. (5 Rich.) 301 (1853); *Purcell v. Purcell*, 12 S. C. Eq. (Riley) 282 (1837). A class gift to "issue" is a per capita gift to all who are included in that term. *Gourdin v. Deas*, 27 S. C. 479, 4 S. E. 64 (1887); *Purcell v. Purcell, supra.* A distribution "share and share alike" is also per capita. *Parrott v. Barrett*, 70 S. C. 195, 49 S. E. 563 (1904). Thus, if Hale had directed distribution of the trust assets "to my issue, share and share alike," each of his lineal descendants living at the death of Hilda — grandchildren, great-grandchildren, and great-great-grandchildren — would have taken an equal share. However, he added the term "per stirpes" to the words of limitation. Under the rule in *Gourdin v. Deas, supra,* the effect of adding "per stirpes" was to limit the distribution to Hale's grandchildren and to cut off the right of remoter issue to an equal share. *See also Vale Royal Manufacturing Co. v. Santee River Cypress Lumber Co.*, 84 S. C. 81, 65 S. E. 955 (1909) (limitation "to issue per stirpes" confines division to immediate issue and children of predeceased immediate issue who take as repre-

sentatives of deceased parent). In other words, the effect of the limitation was to provide for per capita distribution to the six grandchildren.

All of the parties agree Hale's use of the term "per stirpes" limited the distribution to his grandchildren, cutting off the right of the great-grandchildren and great-great-grandchildren to an equal share in the trust estate. John Hale Granger argues, however, "it is obvious that the words 'share and share alike' as used in the trust was [sic] referencing the children of W. R. Hale and not the grandchildren." This interpretation simply ignores the plain language of the trust instrument.

The trust estate is to be distributed *among* the "issue" *upon* the death of Hale's children. Obviously, the word "issue" cannot include the children. They are merely income beneficiaries of the trust during their lives. They are given no interest in the trust corpus after they die and the trust is terminated. The "issue" are those who will take the trust corpus upon the children's deaths, not the children themselves. The words "share and share alike" plainly refer to the "issue" and define the manner in which the corpus is to be divided among them. Each is to take an equal share. Hale is careful to describe them as "my issue," not as the children's issue, indicating that each takes in his own right as a descendant of Hale, not as a representative taking the share his parent would have received.

The added words "per stirpes" then limit those who are to take to the immediate issue (i.e. Hale's living grandchildren). The grandchildren are the stirpital generation. Remoter issue can take only as representatives of a predeceased grandchild, i.e. per stirpes, not per capita. *See Gourdin v. Deas, supra.* Since all of Hale's grandchildren were living when the trust terminated, the remoter issue have no right to participate in distribution of the estate. *Id.*

John Hale Granger next argues that the terms "share and share alike" and "per stirpes" are inherently contradictory, creating an ambiguity in the trust instrument. He asks us to resolve this "ambiguity" by reference to Hale's will which he executed in 1941, fourteen years after the declaration of trust. We reject this argument for two reasons.

First, there is no contradiction in the way Hale used "share and share alike" and "per stirpes." "Share and share alike" applies to distribution among the immediate issue; "per stirpes" prevents the remoter issue from taking except by representation. The terms are not contradictory, because they apply to different degrees of issue. Accordingly, there is no need to go outside the four corners of trust instrument to discover the settlor's intent.

Second, it is well settled that the terms of a later will cannot control disposition under a trust instrument previously executed. *Purcell v. Purcell, supra.* To allow subsequent declarations of intent to control construction of the trust instrument would allow a settlor to revoke or modify a trust at his pleasure in direct contravention of the rule that a trust cannot be revoked or modified unless such a power is expressly reserved in the instrument. *Chiles v. Chiles,* 270 S. C. 379, 242 S. E. (2d) 426 (1978). Therefore, we cannot resort to the later will to determine distribution under the trust.

We agree with the master that this trust instrument was drawn with great care and skill by a draftsman well acquainted with the decisional law in 1927. When read in the light of the rule in *Gourdin v. Deas,* its provisions are unified, consistent, and sensible. There is every reason to believe Hale regarded his grandchildren with equal affection and intended them to share equally in the trust estate if they were living when his children died. The trust instrument employed the precise language needed to provide that result. We should defeat the settlor's intent if we created a conflict in the words of the trust and used it to give John Hale Granger a share of the estate four times larger than some other grandchildren. Such an unequal division cannot be what the settlor meant by "share and share alike."

## II.

The second question presented is whether Hale validly amended the trust instrument in 1941 to appoint Hilda Hale Granger, his daughter, as a successor trustee to himself. The master held Hilda's appointment was valid. We reverse.

The declaration of trust executed in 1927 appointed Hale's son, William, to be "the sole trustee hereunder" in the event

Hale died before the final distribution of the trust estate. On January 29, 1941, Hale executed a document purporting to amend the original declaration of trust to appoint his daughter Hilda as co-trustee "jointly and in conjunction with" William. William died on July 20, 1941. On August 2, 1941, Hale executed another document appointing Hilda as trustee in the event of his death before final distribution of the trust estate. Hale died on March 7, 1947. Thereafter, Hilda assumed the management of the trust until her death in 1984. During this period, she apparently paid the income of the trust to herself alone. She also conveyed trust property to third parties. Her husband, John D. Granger, actively participated in transactions involving trust property, although he was not named as a co-trustee in any instrument executed by Hale. There was never any accounting of Hilda's administration of the trust. Donna Hale Bonney, one of the six grandchildren, now challenges the validity of Hilda's appointment as trustee and calls for an accounting.

As a general rule, a settlor cannot modify a trust ██ instrument unless, by the express terms of the trust, he reserves a power of modification. *Chiles v. Chiles, supra; Starling v. Taylor,* 1 N. C. App. 287, 161 S. E. (2d) 204 (1968); Restatement (Second) of Trusts § 331 (1959). This is true whether the settlor declares himself the trustee or transfers property to another in trust. *Restatement (Second) of Trusts* § 331 comment f (1959). If a trust is created and the trustee ceases for any reason to be a trustee, a new trustee can be appointed by a proper court or by the person, if any, who by the terms of the trust is authorized to appoint a trustee. *Sullivan v. Latimer,* 35 S. C. 422, 14 S. E. 933 (1892); *Clarke v. Deveaux,* 1 S. C. 172, (1869); *Restatement (Second) of Trusts* § 108 (1959). Since the 1927 declaration did not reserve a power to modify or amend the trust and did not grant anyone the power to appoint a trustee, only the court could change the trustee. *Chiles v. Chiles, supra; Whitehead v. Whitehead,* 142 Ala. 163, 37 So. 929 (1904); *Wilson v. Towle,* 36 N. H. 129 (1858).

Notwithstanding the general rule, the master, relying on *Leaphart v. Harmon,* 186 S. C. 362, 195 S. E. 628 (1938), concluded Hilda had authority to act as trustee under the principle that a trust will not be allowed to fail for want of a

proper trustee. In so holding, the master misapplied the law. In *Leaphart*, the Supreme court held that because a trust will not fail for want of a trustee, the executors of a settlor's estate can apply to a court for relief when the designated trustee declines to accept the position. The Court gave no indication any party other than a court is authorized to appoint a new trustee without an expressly reserved power of appointment under the trust instrument.

The master also relied on *In re C. D. Harader Trust*, 303 Pa. Super. 10, 449 A. (2d) 52 (1982), a decision of the Superior Court of Pennsylvania. In that case, the settlor named two individuals as the primary and the successor trustee in the original trust instrument. He reserved no power to modify or revoke the trust. Some five years later, the settlor executed a "supplement," naming a bank as an alternate successor trustee in the event the individuals named in the original instrument were unable to act. Thereafter, the two individuals died leaving a vacancy in the office of trustee. A trust company was appointed by the court to fill the vacancy. The bank then petitioned to vacate the appointment of the trust company and give effect to the settlor's supplement in which he named the bank as successor trustee. The court denied the petition.

On appeal, the superior court reversed:

> We perceive no valid reason ... for refusing to reform the trust intrument to give effect to the settlor's selection of an alternate trustee. His intention in this regard should be given preference over an independent selection by the court. The amendment executed by the settlor did not alter the trust instrument. It did not change the beneficiary or alter in any way his rights or the conditions of the trust. When the settlor became aware, following the unexpected death of his son, that a possibility existed that the named trustees might not survive the termination of the trust, he sought to protect against this unanticipated contingency by naming an alternate trustee. The appellate suggests neither practical nor policy reasons for refusing to allow the trust instrument to be reformed in this manner, and we perceive none.

*Id.* at 13, 449 A. (2d) at 53-54.

While *Harader* may have been correctly decided on ■ its own facts, we do not find it persuasive authority for this case. We read the decision as holding that when the court must fill a vacancy in the office of trustee, it should give effect to the settlor's expressed preference unless there are reasons not to do so. Unlike the bank in *Harader*, Hilda did not ask a court to reform the trust instrument to give effect to the settlor's preference for a trustee. Unlike the bank, Hilda did not ask to be appointed as trustee by a court. She simply assumed the powers of the trustee on her own. Thus, a court had no opportunity, as the *Harader* court did, to consider whether practical or policy reasons dictated the choice of another trustee.

In this case, there was a reason why a different trustee should have been appointed. Hale provided that after the death of his wife, the income of the trust should be expended for the support of any one or more of his "issue," as the trustee thought advisable. Thus, after his wife's death in 1941, all of Hale's lineal descendants became income beneficiaries of the trust until Hilda's death in 1984. How the income was to be spent on these beneficiaries was left entirely to the discretion of the trustee. Since Hilda herself was one of the beneficiaries, she was not disinterested in the way the trustee exercised his discretion. By assuming the role of trustee upon her father's death, Hilda placed herself in a conflict of interest. By paying the income of the trust solely to herself, she affected the rights of the other beneficiaries to support and maintenance from trust funds.

A trustee must exclude all selfish interest in his deal- ■ ■ ings on behalf of the beneficiaries of the trust. *Cartee v. Lesley*, 290 S. C. 333, 350 S. E. (2d) 388 (1986). Consequently, it is generally undesirable for one of the beneficiaries of a trust to act as trustee, since he is thereby put in a position to favor himself at the expense of the other beneficiaries. *Yates v. Yates*, 255 Ill. 66, 99 N. E. 360 (1912); *Selleck v. Hawley*, 131 Mo. 1038, 56 S. W. (2d) 387 (1932). For this reason, a court should normally refuse to appoint as trustee a beneficiary whose interests may conflict with those of other beneficiaries. *Yates v. Yates, supra.*

Even though Hale did not reserve the power to amend

██ ██ the trust, the master upheld Hilda's authority to act as trustee, because he felt

it is quite clear that if the ministerial act of filing a lawsuit to amend the trust to add Mrs. Granger as a trustee had been undertaken, there is no question that such action would have been quickly and routinely approved.

In reaching this conclusion, the master erred. The appointment of a trustee by the court is not a ministerial act; it is an act of judicial discretion. *In re Tempest*, (1866) 1 Ch. App. 485 (Turner, L. J.): *In re Chapman's Estate*, 258 Wis. 442, 45 N. W. (2d) 927 (1951). In the exercise of that discretion, the court should always give careful consideration to the purposes of the trust and the best interest of all of the beneficiaries. *In re Tempest, supra; Steger v. Northen*, 229 Ill. App. 529 (1923). In the circumstances of this case, the appointment of Hilda as trustee could hardly have been "quickly and routinely approved," since she herself was a beneficiary of the trust.

Finally, the master held that even if Hilda's appointment was invalid, Donna Hale Bonney could not question her authority to act as trustee, because Bonney was guilty of laches.

Laches is the neglect for an unreasonable and unex-
 plained length of time, under circumstances permit-
ting diligence, to do what in law should have been done. *De Laine v. De Laine*, 211 S. C. 223, 44 S. E. (2d) 442 (1947). To be charged with laches, a party must have knowledge of the facts upon which he bases his claim. *Arceneaux v. Arrington*, 284 S. C. 500, 327 S. E. (2d) 357 (Ct. App. 1985). Ordinarily, laches will not run against one who is a minor or who has no reason to assert a claim. *Fouche v. Royal Indemnity Co. of N. Y.*, 212 S. C. 194, 47 S. E. (2d) 209 (1948); *Stokes v. South Carolina Tax Commission*, 256 S. C. 260, 182 S. E. (2d) 306 (1971). Delay alone in the assertion of a right does not constitute laches. *Grossman v. Grossman*, 242 S. C. 298, 130 S. E. (2d) 850 (1963). Whether the plaintiff is barred by laches is to be determined in light of the facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party. *Pri-*

*vette v. Garrison,* 235 S. C̆. 119, 110 S. E. (2d) 17 (1959).

We hold Bonney is not barred by laches from challenging Hilda's authority to act as trustee. The original declaration of trust was executed in 1927, several years before Bonney was born. When Hale purported to amend the trust in August 1941, Bonney was an infant barely five years old. When Hilda assumed the powers of the trustee in 1947, Bonney was still a minor. Her father, an income beneficiary of the trust during his life, was dead. Bonney had no reason to know of the trust when she reached majority and had no actual knowledge of its existence until 1983. Her interest in the trust corpus did not vest in possession until Hilda's death in 1984. In general, one with a remainder interest in a trust is not guilty of laches if he sues promptly after his interest vests in possession, even though there was a long delay before his interest became possessory. *Curtis v. DesChamps,* 290 S. C. 315, 350 S. E. (2d) 201 (Ct. App. 1986); *Fidelity Deposit Co. of Md. v. State,* 164 Md. 304, 165 A. 176 (1933). In the circumstances, Bonney was reasonably diligent in asserting her rights after she learned of the trust in 1983.

Since Hilda had no authority to act as trustee under the declaration of trust, she became a constructive trustee when she assumed the power to deal with the income and property of the trust. *Beard v. Stanton,* 15 S. C. 164 (1881); *Jones v. Katz,* 325 Ill. App. 65, 59 N. E. (2d) 537 (1945); *Ehrlich v. Lichtenfeld,* 502 S. W. (2d) 420 (Mo. Ct. App. 1973). To the extent her husband, John D. Granger, assumed control of the trust and participated in transactions involving trust property, he was also a constructive trustee. *Beard v. Stanton, supra; Jones v. Katz, supra; Ehrlich v. Lichtenfeld, supra.* As such, both are liable to account to the income and remainder beneficiaries of the trust for their disposition of trust assets. *Ehrlich v. Lichtenfeld, supra; La Vaud v. Reilly,* 295 N. Y. 280, 67 N. E. (2d) 242, *reh'g denied,* 295 N. Y. 941, 68 N. E. (2d) 40 (1946).

## III.

The third question presented is whether the master erred in denying Bonney's motion to join as parties defendant all persons currently claiming an interest in real property con-

veyed from the trust estate by Hilda Hale Granger as trustee. Because he upheld the validity of Hilda's appointment as trustee, the master considered the conveyances also valid and did not grant the motion. We remand for joinder of the additional parties.

S. C. R. Civ. P. 19(a) provides that the court shall join as a party a person subject to service of process (1) if in his absence complete relief cannot be granted to those already parties or (2) if he claims an interest in the subject of the action and is so situated that disposition of the action in his absence may impair his ability to protect that interest or may subject those already parties to a substantial risk of incurring multiple or otherwise inconsistent obligations by reason of his claimed interest.

In this case, Bonney claims Hilda's conveyances of trust property to third parties were invalid or, in the alternative, that they took title subject to the trust. Complete relief cannot be granted on these claims unless the persons now holding record title to the properties are before the court. Similarly, disposition of these claims in the absence of the current owners of the properties would subject Hilda's estate to a substantial risk of multiple or inconsistent obligations with respect to the conveyances. The validity of the conveyances should not be determined unless all those claiming an interest in the properties are before the court. "The courts in this State have routinely held that where two persons claim title to the same property it is appropriate for both to be made a party to the action wherein title is to be determined. This prevents a multiplicity of actions." *Ex parte Harmon,* 256 S. C. 328, 331, 182 S. E. (2d) 300, 302 (1971). Accordingly, the master should have granted the motion to join the additional parties as defendants.

## IV.

The final question on appeal is raised by W. R. Hale, III, who seeks reversal of the master's order directing partition and sale of certain trust property. None of the parties questions the propriety of partitioning and selling the property still held in trust. W. R. Hale, III, himself admits the trust estate should be partitioned and sold as quickly as practical.

However, he raises a technical objection to the master's jurisdiction to order a partition and sale and also claims the master abused his discretion in prescribing the manner of sale. We affirm the master on both grounds.

A.

Bonney commenced this action prior to Hilda's death, seeking construction of the trust instrument, an accounting by Hilda, damages for breach of trust, and removal of Hilda as the trustee. The consent order of reference empowered the master to enter final judgment with direct appeal to the Supreme Court. While the case was pending before the master, Hilda died. Because Hilda's death terminated the trust, Bonney moved to amend her complaint to seek partition, sale, and distribution of the trust estate. W. R. Hale, III, now argues the order of reference empowered the master to enter judgment only on those matters pleaded at the time the order of reference was entered. Since partition, sale, and distribution were raised by an amendment of the pleadings after the order of reference, W. R. Hale, III, contends the master had no authority to enter judgment on those issues.

Where a case is referred to the master by order of the court, S. C. R. Civ. P. 53(c) gives the master the power to conduct hearings in the same manner as a trial by the court, unless the order of reference specifies or limits his powers. Rule 53(e) states that the master shall direct entry of judgment in the action without further order of court if the order of reference so provides.

In this case, the order of reference placed no limits on the power of the master to conduct the reference and it directed him to enter judgment. Since the master was authorized to conduct the case in accordance with the rules of civil procedure, he had authority to permit amended pleadings and to enter judgment on the issues raised by the amendments. *See* S. C. R. Civ. P. 53(c), 15, 53(e)(1). By consenting to an order of reference without limitation, W. R. Hale, III, submitted to the master's subject matter jurisdiction to the same extent as if the matter were before the circuit court. *Cf. Fox v. Munnerlyn,* 283 S. C. 490, 493, 323 S. E. (2d) 68, 69 n. 1 (Ct. App. 1984). His jurisdictional argument is, therefore, without merit.

## B.

W. R. Hale, III, also asserts the master abused his discretion in prescribing the method by which three tracts of real estate are to be sold. We have carefully reviewed the order of partition and sale and find no abuse of discretion. Paragraph 7 of the order specifically provides that after bids are received and before the properties are actually sold, the parties shall have the right to request a hearing to present evidence as to why a particular bid should or should not be accepted by the master. The order also permits, but does not require, all parties to submit to the master names of prospective bidders on the properties. These provisions give the parties ample protection against an arbitrary or unreasonable sale of the properties by the master. Moreover, should the actual sale be improperly conducted, the parties can move to have it set aside. *See, e.g., Spillers v. Clay*, 223 S. C. 99, 103 S. E. (2d) 759 (1958); *Henry v. Blakely*, 216 S. C. 13, 56 S. E. (2d) 581 (1949).

## V.

The parties have briefed a number of additional issues concerning the liability of Hilda Hale Granger and John D. Granger for an accounting and for breach of trust. The master did not rule on these issues and it would be premature for us to do so, especially before the additional parties have been joined and a complete factual record has been developed.

In summary, we affirm the judgment that the trust estate is to be divided into six equal parts for distribution to Hale's six grandchildren. We also affirm the order of partition and sale and remand for sale of the trust properties to proceed in accordance therewith. We reverse the judgment confirming the validity of Hilda Hale Granger's appointment as trustee by the 1941 instrument of amendment. The case is remanded for an accounting by the personal representatives of Hilda Hale Granger and by John D. Granger of the income and property of the trust. On remand, we further direct the master to join as parties defendant all persons currently claiming an interest in any real property conveyed from the trust estate by Hilda Hale Granger as trustee since March 7, 1947.

Affirmed in part, reversed in part and remanded.

CURETON and GOOLSBY, JJ., concur.